**Joseph SAGLIMBENI, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–01–00501–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 31, 2002.

Discretionary Review Refused
June 4, 2003.

 
 
 
 

 
 
 
 
 
 
 

 
 
 
 
 

 
 
 
 
 
 
 
 
 

 
 

 

 
 

Mark Stevens, Attorney At Law, San Antonio, for Appellant.

Enrico B. Valdez, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by PHIL HARDBERGER, Chief Justice.

This case, involving indecency with a child, raises an issue of cross-examination.

The case revolves around the testimony of the child, who stated the indecency occurred, and the defendant, who denied it. The State presented evidence that the victim had certain behavioral problems since the event and argued that the problems substantiated that the indecency had occurred. The defendant attempted to cross-examine the victim about another traumatic event he had experienced: the sexual assault of his younger sister by his cousin. This event occurred during the same time period. The cross-examination was not allowed, and thus, this appeal.

## BACKGROUND

The defendant, Joseph Saglimbeni, was a piano teacher in San Antonio. The complainant, N.B., 13, was one of his students. Viewing the facts most favorable to the jury verdict, the following transpired. Saglimbeni taught N.B. the piano over a five-year period, 1992–1997. Nothing more unusual than the attempted mastering of the delicacies of the piano occurred until the spring of 1997. Then the massages started. Over the course of the next several months, Saglimbeni and N.B. began laying on the floor and massaging each others' thigh areas. Eventually, Saglimbeni would place N.B.'s hand on his genitals over his clothing, and N.B. would feel Saglimbeni's genitals under his hand. N.B. testified that this occurred at least ten times between January or February 1997 and October 1997, when he took his last piano lesson. N.B. did not tell anyone of the abuse until almost two years later, in June 1999, when he told his mother. Four months later, in October, the abuse was reported to the police.

Saglimbeni was charged with indecency with a child. He pleaded not guilty to the charge, and testified on his own behalf. The jury did not believe him. They found him guilty and recommended he serve eight years probation and pay a $5,000 fine. The trial court placed Saglimbeni on ten years community supervision.

## FALSE IMPRESSION AND CROSS-EXAMINATION

In his first two issues, Saglimbeni argues that N.B. and his mother created a false impression during direct examination that Saglimbeni was solely responsible for N.B.'s problems following the offense. Saglimbeni contends that this entitled him to cross-examine N.B. and his mother about the sexual assault of N.B.'s sister. The State asserts that N.B. and his mother did not create a false impression that entitled the defense to cross-examine them. Even if N.B. and his mother created a false impression, the State argues that the trial court properly limited the cross-examination, or that any error was harmless.

### 1. Facts

The State filed a motion in limine seeking to prohibit Saglimbeni from questioning N.B. regarding an incident that occurred in the summer of 1997 in which his cousin sexually molested N.B.'s eight-year-old sister while he and his cousin were babysitting her. Although N.B. did not know at the time that his cousin had abused his sister, he was told about the incident a few months later. At a pre-trial hearing, Saglimbeni's counsel agreed not to question anyone about the incident without first approaching the bench.

In its opening statement, the State proffered a theory that N.B. was a well-adjusted boy who made excellent grades until his eighth and ninth grade year, when his personality changed dramatically. At this point, N.B. became depressed, angry, and his grades declined. The State attributed this change solely to Saglimbeni's abuse of N.B. The State told the jury the following:

> You're also going to learn that not only did [N.B.] suffer some sexual

abuse at the hands of the defendant, but you're going to learn how that affected him. He went from being a straight A student, making any-where—I think the lowest grade in the first couple years was a 94, to making forties, fifties, and sixties.

You're going to learn that he got depressed; that he was angry after he had been abused, and you're going to hear from the parents that saw these changes in [N.B]. They didn't know exactly what was happening, but they knew something was terribly wrong.

And about two years after the last time the defendant abused [N.B.], he said something. He kept it in for a while, as best he could, and then one day in the summer of 1999, he was in the car with his mother. His mother is asking him, "[N.B.], what is wrong? Your grades are dropping. You're depressed. You stay in your room. You're not yourself. What is wrong with you?" Finally, [N.B.] tells what's wrong with him.

On direct examination, N.B. corroborated this theory by testifying that after the abuse happened, he became depressed and his grades began to drop in eighth grade and continued dropping through his ninth grade year. N.B. had a confrontation with his father in which N.B. broke down. A few days after the incident with his father, N.B. attempted suicide by ingesting 30 to 40 Tylenol pills. After direct examination, Saglimbeni argued that he should be allowed to cross-examine N.B. regarding his sister's abuse because N.B. testified that his problems were solely attributable to Saglimbeni. The court refused. During cross-examination, N.B. testified that the reason his grades dropped was because of Saglimbeni's abuse. N.B. further stated that Saglimbeni's abuse was the reason he

had the misguided rage toward his parents and siblings.

N.B.'s mother testified similarly. She said that N.B. was an excellent student and had a good relationship with the family until the eighth grade. At that time, he became depressed and his grades began declining. He then attempted suicide. During cross-examination, N.B.'s mother testified that her husband and she both had a history of suffering from depression. N.B.'s mother also stated that initially she thought her son's depression was biochemical until he told her about Saglimbeni's abuse. After his outcry, she felt the abuse "explained [N.B.'s] behavior." She stated, "[b]ut you know what, after this man decided to put his hands on my son's pants, my son had a problem with that. It affected his psyche."

During the bill of exceptions, outside the presence of the jury, the defense questioned N.B. regarding his cousin's sexual abuse of N.B.'s sister. He stated that he was shocked by the incident and felt somewhat responsible for not being "more aware of what was going on." However, when responding to the question of whether this was one of the events that had made him angry over the past few years, N.B. stated "[i]f it attributes anything, it's very, very, small." N.B. also stated that the incident contributed "a bit," but "not a lot" to his depression and his declining grades.

Saglimbeni argued that the sexual abuse incident could be a different cause for N.B.'s problems; therefore, the cross-examination was relevant in challenging the credibility of N.B. and his mother as witnesses. The court refused to allow the testimony.

*2. False Impression*

 In most false impression cases, the general rule is that "[w]here a false

picture is presented by the defense, the prosecution may impeach the defense witnesses' testimony by introduction of extraneous offenses." *Creekmore v. State,* 860 S.W.2d 880, 892 (Tex.App.-San Antonio 1993, pet. ref'd) (en banc). In sexual abuse cases where the defendant has stated during direct examination that he has never molested anyone else, the State is allowed to bring in rebuttal testimony of the defendant's extraneous sexual offenses, including sexual abuse of other children besides the victim. *See id.* at 893; *Patton v. State,* 717 S.W.2d 772, 777 (Tex.App.-Fort Worth 1986, pet. granted), *vacated on other grounds,* 761 S.W.2d 1 (Tex.Crim. App.1988). This case, however, presents an issue of first impression. No Texas cases address the issue of whether a defendant may cross-examine a State's witness who has left a false impression regarding a particular subject. There are, however, several cases in which the State was allowed to cross-examine a defense witness after that witness left the false impression about a particular subject.

In *Wheeler v. State,* the court held that the State was allowed to cross-examine a defense witness to correct the false impression that her testimony gave the jury regarding the appellant's risk of abuse. 67 S.W.3d 879, 885 (Tex.Crim.App.2002) (en banc). The court reasoned that "[w]hen a witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach that witness'[s] testimony by cross-examining the witness concerning similar extraneous offenses." *Id.* The court reasoned that "[b]y raising the defensive theory that appellant posed no risk of abuse, appellant ... **opened the door** for the State to cross-examine her regarding an extraneous offense if the extraneous offense would tend to correct the false impression left by the witness'[s] direct examination testimony." *Id.* (emphasis added). Similarly in *Wright v. State,* the Court of Criminal Appeals held that where the defendant's mother "made a factually incorrect statement on direct examination," the State was allowed to impeach her with evidence to question her credibility and abrogate the false impression she gave about her son. 591 S.W.2d 458, 460 (Tex.Crim.App.1979); *see Sherman v. State,* 20 S.W.3d 96, 101 (Tex.App.-Texarkana 2000, no pet.) (stating that "[w]hen a witness leaves a false impression concerning a matter relating to his or her credibility, the opposing party is allowed to correct that false impression"). There is no reason the false impression rule should not work both ways. If the State is permitted to cross-examine a defendant or a defense witness who creates a false impression, the defendant should be permitted to cross-examine a State's witness who creates a false impression.

### 3. *Cross–Examination*

■ The Sixth Amendment of the United States Constitution provides that a criminal defendant has the right "to be confronted with the witnesses against him." U.S. CONST., amend VI; *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right includes the right to cross-examine and is extended to the states by the Fourteenth Amendment. *Pointer,* 380 U.S. at 406, 85 S.Ct. 1065; *Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App.1996). Cross-examination elicits facts that give the jury certain factors, such as attitude, motive, and interest, that tend to affect the witness's credibility, and show his testimony was biased or untrue. *Carroll,* 916 S.W.2d at 497; *Koehler v. State,* 679 S.W.2d 6, 9 (Tex.Crim.App. 1984) (en banc); *see also Alford v. United States,* 282 U.S. 687, 691–92, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

Although the rights to confrontation and cross-examination are constitutionally protected, these rights are not absolute. *Huff v. State*, 897 S.W.2d 829, 839 (Tex.App.-Dallas 1995, pet. ref'd). The trial court has great latitude "to impose reasonable limits on cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of issues, and the witness's safety." *Virts v. State*, 739 S.W.2d 25, 28 (Tex.Crim.App.1987). However, the Sixth Amendment should be liberally construed to give appropriate constitutional protection to the defendant. *Chew v. State*, 804 S.W.2d 633, 635 (Tex. App.-San Antonio 1991, pet. ref'd). The right to cross-examination includes "the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." *Virts*, 739 S.W.2d at 29. "[A]ny question asked of a witness on cross-examination, *which might have a tendency to show the witness'[s] credibility*, is always a proper question." *Koehler*, 679 S.W.2d at 9. Accordingly, the proper scope of cross-examination includes "all facts and circumstances that when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish only one side of the cause." *Sherman*, 20 S.W.3d at 100; *Carroll*, 916 S.W.2d at 497–98; *Alexander v. State*, 949 S.W.2d 772, 774–75 (Tex.App.-Dallas 1997, pet ref'd).

### 4. Application

The State's theory was that N.B.'s problems of depression, suicidal attempts, and declining grades were a direct result of Saglimbeni's abuse. This theory was used from opening statement until the end of the trial. *See Powell v. State*, 63 S.W.3d 435, 440 (Tex.Crim.App.2001) (concluding that a defendant may open the door to cross-examination in opening arguments as well as direct examination). N.B.'s problems were used to bolster his credibility, to show that Saglimbeni engaged in the abuse. Both N.B. and his mother so stated. However, the sexual assault of N.B.'s sister provided another reason that could have caused or contributed to N.B.'s behavior. He was present at the time of the abuse and responsible for her care. It happened during the same time frame. Saglimbeni had the right to cross-examine N.B. and his mother about whatever else might explain his changed behavior.

The trial court may reasonably limit cross-examination, but *Virts* teaches us that a "trial judge should always allow the defendant great latitude to show any relevant fact that might tend to affect the witness's credibility." *Virts*, 739 S.W.2d at 29 (Tex.Crim.App.1987). The fact that N.B. experienced another traumatic incident during the same time frame that could have caused his behavioral problems goes directly to the State's theory. We hold the trial court improperly limited the scope of Saglimbeni's Sixth Amendment right to cross-examination by not allowing cross-examination of N.B. and his mother to correct a possible false impression. The next question is whether such constitutional error was harmful.

### 5. Harmless Error

Any error that improperly limits the right to confrontation, including the constitutional right to cross-examination, is subject to a harmless error analysis. *Mallory v. State*, 752 S.W.2d 566, 569 (Tex. Crim.App.1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In performing a harmless error analysis, the reviewing court must review the entire record and

apply a three-prong test. *Young v. State*, 891 S.W.2d 945, 948 (Tex.Crim.App.1994); *Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim.App.1991); *Alexander*, 949 S.W.2d at 775. Under the first prong, the reviewing court must "assum[e] that the damaging potential of the cross-examination [was] fully realized." *Delaware*, 475 U.S. at 684, 106 S.Ct. 1431; *Shelby* 819 S.W.2d at 547 (Tex.Crim.App.1991). The court must review the error in consideration of the following five factors: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* Finally, keeping the first two prongs in mind, the reviewing court must reverse a "conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex.R.App. P. 44.2(a); *see id.*

There are several cases in which reversible error has been found based on the trial court's denial of a defendant's right to cross-examination. In *Virts v. State*, the court found that the cross-examination should have been allowed "because it might have aided the jury in deciding whether to believe" the witness. 739 S.W.2d 25, 30 (Tex.Crim.App.1987). In *Shelby v. State*, the court held that the trial court committed reversible error by precluding the defense from cross-examining the complainant's mother regarding her pending civil lawsuit against the apartment complex where her daughter was sexually abused. 819 S.W.2d 544, 545, 551 (Tex.Crim.App.1991). The State sought to cross-examine the complainant's mother to attack her credibility as a witness by showing a possible bias and motive. *Id.* at 545. After applying the harmless error test, the court concluded that it could not determine "beyond a reasonable doubt that the denial of the appellant's fundamental right to cross-examination guaranteed by the Confrontation Clause of the Sixth Amendment was harmless." *Id.* at 551.

The State's case hinged on the jury believing N.B.'s testimony. Either N.B. was telling the truth or Saglimbeni was. *See Wheeler*, 67 S.W.3d at 888 (noting most sexual abuse cases hinge on credibility because the trial is generally a swearing match between the complainant and the defendant). The State sought to convince the jury that N.B. must have been abused because there was no other explanation for his changed behavior. N.B. and his mother testified that the abuse was the sole explanation for N.B.'s problems. Although N.B. and his mother were questioned regarding some other reasons for his behavior, the sexual abuse of N.B.'s sister was not cumulative of any other reasons. Had the jury been allowed to weigh this other traumatic event that occurred during the same time frame, they could have questioned the cause of N.B.'s problems.

The outcry was made almost two years after the incident. Credibility was important given the conflicting testimony of N.B. and Saglimbeni. We cannot determine beyond a reasonable doubt that the error did not contribute to Saglimbeni's conviction or punishment.

### CONCLUSION

We reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with our opinion. We do not address the other issues raised by Saglimbeni because they are not necessary to the final disposition of this appeal. Tex.R.App. P. 47.1.

Dissenting opinion by PAUL W. GREEN, Justice.

PAUL W. GREEN, Justice, dissenting.

I respectfully dissent because I believe the trial judge acted within its discretion in limiting Saglimbeni's questioning of N.B. and his mother regarding a previous, unrelated, sexual assault on N.B.'s sister by a cousin.

The proof of N.B.'s assault, according to the State, was the evidence of his declining social behavior after the time of his alleged assault by Saglimbeni. Saglimbeni wanted to show, instead, that N.B.'s behavior could be explained by the fact that he was negatively affected by the incident involving his sister. In the bill of exception, however, N.B. testified that if the assault on his sister affected him, it's effect was only "very, very, small." If there was error, it was harmless.