Donald Conrad LEMPAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–04–00743–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 28, 2005.

Rehearing Overruled Feb. 13, 2006.

Discretionary Review Refused
June 28, 2006.

Beth Watkins Squires, Law Office of Beth Watkins Squires, Patton L. Zarate, San Antonio, for appellant.

Daniel Thornberry, Scott Roberts, Asst. Crim. Dist. Attys., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, REBECCA SIMMONS, Justice.

## MEMORANDUM OPINION

Opinion by CATHERINE STONE, Justice.

Donald C. Lempar was convicted by a jury of two counts of aggravated sexual assault and two counts of indecency with a child. The jury sentenced Lempar to fifteen years of confinement for each count of aggravated sexual assault, and five years of confinement for each count of indecency with a child. The trial court ordered that the sentences for the first count of aggravated sexual assault and the first count of indecency with a child run consecutively and that the sentences for the remaining counts run concurrently for a total of twenty years confinement.

On appeal, Lempar contends: 1) the trial court erred in failing to conduct a hearing on his motion for new trial; 2) in the interest of judicial economy, we should dispose of all issues on appeal if we sustain Lempar's first issue; 3) the trial court violated Lempar's Sixth Amendment right to cross-examine the witnesses against him; and 4) the defense was harmed by the State's failure to timely disclose *Brady* material. We affirm the trial court's judgment.

### BACKGROUND

C.L., a minor, lived in Ruidosa, New Mexico. In June 2002, when she was seven and a half years old, C.L. visited her aunt and uncle, Josanna and Donald Lempar, in San Antonio, Texas. During her visit, C.L. complained to her aunt that she had been sexually assaulted by her uncle. Thereafter, Lempar was charged with three counts of aggravated sexual assault of a child and two counts of indecency with a child by contact.

The case was called for trial in June 2004. After voir dire concluded, the day before the State's case-in-chief began, the State disclosed a document to Lempar which included a statement by C.L.'s aunt, Josanna Lempar, that C.L. had previously accused her father and a neighbor of sexually assaulting her.

One day after the document was disclosed, Lempar complained to the trial court that the document contained exculpatory material and moved for a continuance. When the continuance was denied, he moved for a mistrial, which was also denied.

At trial numerous witnesses were called, including C.L. C.L. provided graphic testimony that when her aunt was at work and she was alone with Lempar, he sexually assaulted her. The trial court limited the questions Lempar could ask C.L. on cross-examination. Following the jury's verdict of guilt, Lempar timely filed a motion for new trial. The trial court refused to set a hearing for the motion, and it was overruled as a matter of law. This appeal followed.

### MOTION FOR NEW TRIAL

In his first issue, Lempar contends that the trial court erred by denying his motion for new trial without conducting an evidentiary hearing. A defendant's right to an evidentiary hearing on a motion for new trial is not an absolute right, and we will reverse a trial court's failure to conduct a hearing only when the court abused its discretion. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex.Crim.App.2003). An evidentiary hearing on a defendant's motion for new trial is necessary only if the motion and accompanying affidavits " 'rais[e] matters not determinable from the record, upon which the accused could

be entitled to relief.'" *Id.* (quoting *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim. App.1993)).

■■■ Because an absolute right to a hearing could lead to fishing expeditions, the motion must be supported by an affidavit which supports the grounds of attack. *Mallet v. State,* 9 S.W.3d 856, 865 (Tex.App.-Fort Worth 2000, no pet.). The affidavit need not reflect every legal component required to establish relief, but must reflect that reasonable grounds exist for the relief sought, and specifically show the truth of the grounds alleged as the basis for a new trial. *Martinez v. State,* 74 S.W.3d 19, 21 (Tex.Crim.App.2002); *Reyes,* 849 S.W.2d at 816. Affidavits conclusory in nature and unsupported by facts are insufficient to put the trial court on notice that reasonable grounds for relief exist; therefore, such affidavits will not support a motion for new trial or justify a request for a hearing on the motion. *Jordan v. State,* 883 S.W.2d 664, 665 (Tex. Crim.App.1994).

In his reply brief, Lempar concedes that the matters contained in his motion for new trial with respect to his first and third grounds for relief are determinable from the record. Therefore, we confine our analysis to Lempar's second and fourth grounds for relief.

■■ In his second and fourth grounds for relief, Lempar argues there are matters not determinable from the record regarding whether the trial court erred in excluding evidence rebutting the State's theory of the case, and erred in excluding evidence regarding inconsistent statements by the complainant. Lempar supported his motion for new trial with several affidavits. Lempar's motion for new trial does not specifically identify which testimony was wrongfully excluded, and the affidavits provide conclusory statements about testimony that the affiants believe should have been introduced at trial.

In Lempar's affidavit, he testified that defense counsel was not permitted to question Josanna about whether she believed C.L. had been sexually abused by her father. However, Josanna's beliefs would not entitle Lempar to relief. *See Jordan,* 883 S.W.2d at 665. The affidavit must show the truth of the grounds of attack and provide some factual support. *Id.* Lempar also contends he was prevented from asking Josanna if C.L. ever told her whether she had seen her older sister having sex. However, the record reflects Lempar was permitted to ask Josanna this question and thus it can be determined from the record and will not provide a basis for mandatory hearing on a motion for a new trial. *Wallace,* 106 S.W.3d at 108. Additionally, Lempar states he was barred from asking Josanna if C.L. ever told her she "didn't like it" when her father would lay on top of her and make her sleep naked with him. This matter was also before the trial court and it sustained the State's hearsay objection to this question. Because this question is determinable from the record, the court did not err in denying a hearing for a motion for new trial.

■■ In Lempar's affidavit, he also contends evidence was excluded regarding C.L.'s homelife, specifically that her father was an alcoholic and had a history of touching C.L.'s sister. Lempar contends these facts could help explain C.L.'s behavior. This contention fails to state what evidence was excluded, who would testify as to C.L.'s homelife and what they would say, and what behavior of C.L.'s this excluded evidence would help to explain. Similarly, Lempar asserts evidence was excluded regarding C.L.'s credibility and character for truthfulness regarding C.L.'s possible other allegations regarding her

father and seeing her sister have sex. These statements are conclusory and fail to provide the trial court sufficient notice of any relief to which Lempar could be entitled. *See Jordan,* 883 S.W.2d at 665.

The affidavit of Dennis Lempar, Lempar's father, claimed C.L. had most likely been sexually abused by a neighbor and had made bizarre sexual allegations in the past, including an allegation she witnessed Josanna having sex with the family dog. Lempar did provide an offer of proof concerning the neighbor, allowing this issue to be determined from the record; therefore, a hearing for new trial upon this issue is unnecessary. *See Reyes,* 849 S.W.2d at 815–16. Because it is unclear what these other allegations were, who would testify about such, and what they would testify about, we hold Dennis Lempar's affidavit testimony that C.L. made other sexual allegations in the past is conclusory. *See Jordan,* 883 S.W.2d at 665 (concluding the affidavit was conclusory; therefore, it was insufficient to entitle appellant a new trial because he failed to state "why counsel's investigation was deficient, or what further investigation would have revealed").

Lempar's first issue is overruled.

## RIGHT TO CROSS-EXAMINE

In his third issue, Lempar contends that he was denied his Sixth Amendment right to confront and cross-examine C.L. re-

garding whether she had ever accused her father or a neighbor of touching her, whether she had ever seen her older sister having sex,[1] and whether she had watched "dirty" movies on television.[2] Lempar argues that the denial of cross-examination regarding these matters created a false impression that C.L.'s knowledge about sexual matters was gained only through sexual abuse at the hands of Lempar. Lempar contends the trial court excluded all reference to C.L. having accused anyone else of sexually assaulting her and "all evidence regarding alternate ways" the complainant could have learned about sex.[3] In a separate argument within this issue, Lempar contends he was denied his constitutional right to cross-examine C.L. regarding alternative explanations for her sexual conduct and knowledge in order to correct a false impression created by the State that she acted out sexually because of Lempar's abuse.

We review a trial court's decision to limit cross-examination under an abuse of discretion standard. *Matchett v. State,* 941 S.W.2d 922, 940 (Tex.Crim.App. 1996), *cert. denied,* 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997). As long as the judge's ruling is within the zone of reasonable disagreement, we will not intercede. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

The Sixth Amendment to the United States Constitution provides that a

---

1. The record reflects that defense counsel was permitted, and did ask C.L. if she had ever seen her older sister having sex. C.L. answered "no."

2. The record illustrates that defense counsel asked C.L. what kind of movies she watched. C.L. replied "kid movies," and sometimes scary movies with her mother.

3. The record does not support this assertion. Besides questioning C.L. if she had ever wit-

nessed her older sister having sex, the defense was permitted to ask C.L. if she had ever seen any of her classmates' bodies without clothes on, if she had seen any pictures of nude people in books, if her parents had ever discussed boy's and girl's bodies with her, and if she had ever seen her older sister without clothes on. C.L. answered "no" to these questions. The defense also asked C.L. how she learned the word "penis" and she stated she did not know.

criminal defendant has the right to be confronted with the witnesses against him. U.S. Const. amend. VI. This right includes the right to cross-examine witnesses and is extended to the states via the Fourteenth Amendment. *Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Id.* Through cross-examination, a defendant tests the believability of a witness and the truth of his or her testimony. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The right to cross-examine extends to any matter that could reflect on the witness' credibility. *Virts v. State,* 739 S.W.2d 25, 28–29 (Tex.Crim. App.1987). The right of an accused to cross-examine a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness' credibility. *Id.* at 29. "[W]ithin reason, the trial judge should always allow the accused great latitude to show any relevant fact that might tend to affect the witness' credibility." *Id.*

██ The constitutionally-protected rights to confrontation and cross-examination are not absolute, however. *Saglimbeni v. State,* 100 S.W.3d 429, 435 (Tex.App.-San Antonio 2002, pet. ref'd). Trial courts have great latitude to impose reasonable limits on cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of issues, and the witness' safety. *Id.* (citing *Virts,* 739 S.W.2d at 28).

## A. Cross-Examination Regarding False Impressions

██ Lempar complains he was unable to cross-examine C.L. about allegations of sexual abuse she allegedly made against her father and her neighbor. Relying on this court's decision in *Saglimbeni,* Lempar argues we must reverse the judgment because the jury was left with the false impression that Lempar's alleged abuse of C.L. was the sole explanation for her detailed knowledge of sexual matters at such a young age. *Saglimbeni* is distinguishable from the case at bar.

In *Saglimbeni,* the State filed a motion in limine to prevent Saglimbeni from questioning the complainant, N.B., regarding an incident in which N.B.'s cousin sexually abused N.B.'s sister. *Id.* at 432. At trial, N.B. and his mother testified that after Saglimbeni allegedly abused him, N.B. suffered from depression, his grades dropped drastically, he broke down after a confrontation with his father, and he attempted suicide. *Id.* Throughout the trial, the State highlighted the testimony of N.B. and his mother concerning the effect the defendant's conduct had on the victim as evidence the sexual abuse had in fact taken place. *Id.* at 432–35. The defense was not permitted to cross-examine N.B. regarding his sister's abuse. N.B. admitted during a bill of exceptions that his sister's abuse was at least a contributing factor to his behavioral changes. *Id.* at 433. This court held that if the State is permitted to cross-examine a defendant or a defense witness who creates a false impression, the defendant should also be permitted to cross-examine a State's witness who creates a false impression. *Id.* at 434. We reversed Saglimbeni's conviction, finding that evidence N.B.'s sister had been abused went directly to the credibility of N.B. and his mother regarding whether it was only the abuse by the defendant that caused the victim's change in behavior, as they so testified, or whether it was the abuse that occurred to his sister that influ-

enced the change. *Id.* We emphasized that "[t]his theory was used [by the State] from opening statement until the end of the trial." *Id.* at 435.

During its opening statement in the instant case, the State argued:

> [Y]ou are going to learn [C.L.] knows things and experienced things that no child of that age should. This exam occurred when she was around seven. Two summers ago, June of '02. And she says that beginning when she was around six, Uncle Donald has been touching her. He put his weenie in my butt crack. He put his weenie in my private. Clear stuff came out. It choked me. He put it in my mouth. Sticky stuff. It gets smaller when it's in the water. We have taken baths together. We've taken showers together. These are things that a child is only going to know if the child has first-hand experience. These are not things that you can learn on TV. When you know how things taste and touch and shrink and grow, how do you know that? Especially when you are six and seven.

This was the only time the State made this argument; it was not a theory relied upon and stressed by the State throughout trial. *Cf. Saglimbeni,* 100 S.W.3d at 435.

The key distinction between this case and the facts in *Saglimbeni* is that C.L.'s testimony never created a false impression that the only way she had learned about sexual matters was by suffering abuse at Lempar's hands. C.L. never testified at trial—or on a bill of exceptions—as to the origin or sources of her knowledge of sexuality. The issue was never raised by her testimony, and there was no basis for the defense to impeach her for such. The Court of Criminal Appeals acknowledged this distinction stating: "[T]he opponent must correct the 'false impression' through cross-examination of the witness who left

the false impression, *not* by calling other witnesses to correct that false impression." *Wheeler v. State,* 67 S.W.3d 879, 885 (Tex. Crim.App.2002). Therefore, we hold that the trial court did not abuse its discretion in limiting cross-examination regarding specific instances of sexual conduct C.L. may have experienced in the past.

## B. Cross–Examination Regarding Prior Sexual Abuse

Lempar asserts in his brief that the trial court "prevented the defense from even suggesting the possibility that the complainant had accused anyone besides Lempar of molesting her" and that "[w]hether the allegation was *true or false,* questions about those allegations were proper and Lempar should have been permitted to test her credibility by asking them." (Emphasis added). Lempar contends that because there was no physical evidence of sexual assault, his need to impeach the credibility of C.L. was great and therefore, he should have been permitted to question C.L. about any sexual misconduct others committed toward her.

The Texas Rules of Evidence generally prohibit evidence of specific instances of an alleged victim's past sexual conduct in prosecutions for sexual assault. Tex.R. Evid. 412 (prohibiting evidence of an alleged victim's sexual history unless such evidence is more probative than prejudicial and either rebuts medical evidence offered by the State, proves consent, relates to motive or bias of the alleged victim, constitutes evidence of a crime, or is constitutionally required to be admitted). In *Lopez v. State,* the Texas Court of Criminal Appeals examined whether the Confrontation Clause requires the admissibility of specific instances of conduct to impeach the credibility of a complaining witness. 18 S.W.3d 220 (Tex.Crim.App.2000). The court noted that the Texas Rules of Evi-

dence generally prohibit questioning a sexual assault victim about specific instances of conduct, and declined to carve out a special exception for sexual offenses. *Id.* at 222. In declining to create an exception, the court explained:

> No other victim of any offense is so likely to be accused of fabricating, fantasizing, or "asking for it." The increased emotional level associated with sexual offenses is all the more reason to refuse to allow the jury to be additionally confused by collateral acts of misconduct by a witness. Indeed, that is the entire purpose behind Rule 608(b).

*Id.* at 224. The court stated, however, that in certain limited cases, "the Confrontation Clause occasionally may require the admissibility of evidence that the Rules of Evidence would exclude." *Id.* at 225.

 While evidence of prior accusations of sexual abuse may be admissible to impeach the credibility of the complainant, there must be a showing that such evidence is probative. *Id.* at 226. To be considered probative, there must be evidence that the prior accusations were similar to the accusations in the instant case, and there must be evidence the prior accusations were false. *See id.* at 222–23 (holding that the defendant was not entitled to cross-examine the complainant in an aggravated sexual assault case where evidence of the complainant's accusations of physical abuse against his mother were not shown to be false); *Hughes v. State,* 850 S.W.2d 260, 262–63 (Tex.App.-Fort Worth 1993, pet. ref'd) (without showing the complainant's accusations of sexual abuse against others were false, such testimony was not relevant to attack the complainant's credibility). The rationale behind this rule is that without supporting evidence establishing that the complainant's previous allegations of sexual abuse were indeed false, permitting such questioning places the complainant in a position of further victimization by insinuating the complainant lies about sexual assault. Such questioning is likely to unduly prejudice and confuse the jury and therefore holds little probative value. *Lopez,* 18 S.W.3d at 222–223.

The State asserts that Lempar has not preserved his argument because he never made an offer of proof or bill of exceptions about the substance of C.L.'s testimony. To preserve error for appellate review with regard to the exclusion of evidence, the substance of the evidence must be made known to the court by an offer of proof, or otherwise be apparent from the context of the questioning. TEX.R. EVID. 103(a)(2); *see Reyna v. State,* 168 S.W.3d 173, 176–77 (Tex.Crim.App.2005) (holding that where appellant contended he had been denied the opportunity to test the complainant's credibility by presenting evidence that the complainant had falsely accused others of sexually molesting her, "the Rules of Evidence make clear, that to preserve error in the exclusion of evidence, the proponent is required to make an offer of proof and obtain a ruling").

 Lempar did make a bill of exception with respect to C.L.'s testimony concerning a twelve year-old neighbor named "Jeffrey." All C.L. testified about, however, was that a neighbor named Jeffrey came to her house and would "get in trouble" but she could not remember why. Because Lempar did not show that C.L. made any false prior allegations of sexual abuse against her neighbor that were similar to the allegations in this case, and because the trial court can limit cross-examination to prevent confusion of the issues and undue prejudice, the trial court did not abuse its discretion in limiting cross-examination to exclude such refer-

ences.[4] *See Lopez,* 18 S.W.3d at 222–23 (absent supporting evidence the complainant has previously made false accusations against others, such testimony holds little probative value because it is likely to prejudice and confuse the jury).

Lempar claims an offer of proof was made concerning the sexual accusations made by C.L. against her father. Specifically, Lempar asserts the issue was preserved informally because the substance of the excluded evidence was apparent from the record. *Akin v. Santa Clara Land Co., Ltd.,* 34 S.W.3d 334, 339 (Tex.App.-San Antonio 2000, pet. denied). However, Lempar must still show the trial court abused its discretion when it prevented him from cross-examining C.L. regarding this matter. *See id.* For the above discussed reasons, he cannot. We overrule Lempar's second issue.

## EXCULPATORY EVIDENCE

In his fourth issue, Lempar contends his constitutional due process rights were affected by the State's failure to timely disclose exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady,* the prosecution has an affirmative duty to turn over favorable material evidence to the defense. *Id.* at 87, 83 S.Ct. 1194. This duty extends to both exculpatory and impeachment evidence. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). To find reversible error under *Brady* and *Bagley,* a defendant must show that: 1) the State failed to disclose evidence, regardless of

the prosecution's good or bad faith; 2) the withheld evidence is favorable to him; and 3) the evidence is material, *i.e.,* there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State,* 86 S.W.3d 603, 612 (Tex.Crim. App.2002). We must analyze the alleged *Brady* violation "in light of all the other evidence adduced at trial." *Id.* at 612–613, 86 S.W.3d 603. We do not apply the separate harmless error standard for reversal for constitutional error contained in Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Id.* at 612, 86 S.W.3d 603.

When the record reflects, however, that the State disclosed the evidence at trial, "the defendant must show that had the State disclosed the potentially exculpatory material *earlier,* there is a reasonable probability that the outcome of the proceeding would have been different." *Id.* at 612 n. 26, 86 S.W.3d 603 (emphasis in original). If Lempar received the material in time to use it effectively at trial, his conviction should not be reversed merely because it was not disclosed as early as it might have and should have been. *Little v. State,* 991 S.W.2d 864, 866 (Tex.Crim. App.1999).

At issue is the State's tardy disclosure of the CPS report in which Josanna told a CPS caseworker C.L. allegedly accused her father and one of her neighbors of touching her. Defense counsel did not receive a copy of the report until 5:00 p.m. on June 9, 2004, the day prior to trial on the merits.[5] Defense counsel indicated

---

4. Actually, the trial court suggested to Lempar's counsel: "What I'm going to ask you to do is to rephrase your question and ask specifically how she got to know these types of situations rather than beating around the bush...." This suggestion was pursuant to Lempar asking C.L. whether she had been alone with an older boy which was an attempt

to solicit information regarding how she became knowledgeable of explicit sexual information.

5. Although the briefs indicate that the State was in possession of the CPS report eight days before trial, there is no evidence in the

on the record that he was aware, based on conversations with Josanna, a defense witness, that C.L. had made other allegations of people touching her. Defense counsel argued that despite his knowledge of the other allegations, the State was still under a duty to timely disclose the CPS report under *Brady*. Defense counsel's request for a continuance so he could further investigate the statements in the CPS report was denied.

On appeal, Lempar argues the contents of the CPS report served to impeach C.L.'s credibility and explained alternative ways C.L. could have learned about sex. Lempar contends the State's tardy disclosure of the CPS report hindered his ability to investigate the allegations in the report, verify the identity of the caseworker who drafted the report, and fully utilize the report's impeachment value before cross-examining C.L. the following day.

Lempar does not explain how he would have cross-examined C.L. differently had the report been disclosed sooner. " 'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' " *Hampton*, 86 S.W.3d at 612 (quoting *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). The inquiry is whether the failure of the evidence's disclosure undermines confidence in the jury's verdict. *See Ex parte Richardson*, 70 S.W.3d 865, 870 n. 22 (Tex. Crim.App.2002).

The State's duty under *Brady* does not extend to turning over evidence that would not be admissible at trial. *Ex*

*parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim.App.1993). In our disposition of Lempar's third issue, we have rejected his contention based on *Saglimbeni* and *Lopez* that he was entitled to cross-examine C.L. concerning C.L.'s alleged accusations against her father and neighbor. We similarly conclude that the statements contained in the CPS report concerning that conduct would not have been admissible to attack C.L.'s credibility. Therefore, we hold Lempar is unable to show how late disclosure of the CPS report undermines confidence in the jury's verdict. We overrule Lempar's fourth issue.[6]

### CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Concurring opinion by ALMA L. LÓPEZ, Chief Justice.

ALMA L. LÓPEZ, Chief Justice, concurring.

Although the majority has decided this case as it must based on the Texas Court of Criminal Appeals' holding in *Lopez v. State*, 18 S.W.3d 220 (Tex.Crim.App.2000) (*Lopez I* ), I write separately to express my dissatisfaction with the state of the law. My position on this area of the law is set forth in the opinion from this court that the Texas Court of Criminal Appeals reversed in *Lopez I*, in which it remanded the cause to our court for further proceedings, and the similar decision it reversed in *Lopez II*, in which it rendered judgment affirming the trial court's judgment. *See Lopez v. State*, 989 S.W.2d 402 (Tex.App.-San Antonio 1999); *rev'd*, 18 S.W.3d 220 (Tex.Crim.App.2000); *on remand to*, 61

---

record of the State's actual receipt of the CPS report.

6. Because Lempar's second issue is dependent on a finding of error in his other issues, we need not address the issue. TEX.R.APP. P. 47.1.

S.W.3d 547 (Tex.App.-San Antonio 2001), *rev'd,* 86 S.W.3d 228 (Tex.Crim.App.2002) (*Lopez II* ). Constrained by the higher court's precedent, I reluctantly concur in the majority's opinion and judgment.