Opinion issued December 2, 2010. 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01012-CR

———————————

Wayne Delwin Gill, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 56th District Court 

Galveston County, Texas



Trial Court Case No. 08CR2227

 



 

MEMORANDUM OPINION

          A
jury convicted Wayne Delwin Gill of felony murder and sentenced him to life
imprisonment after the jury found two enhancement paragraphs to be true.  See Tex. Penal Code Ann § 19.02 (Vernon 2003).  On appeal, Gill contends that the trial court
abused its discretion by denying his motion for new trial based upon
exculpatory information, namely cell phone records that he contends the State
withheld in violation of Brady v. Maryland,
373 U.S. 83, 83 S. Ct. 1194 (1963).  We
hold that the trial court did not abuse its discretion in denying Gill’s motion
for new trial.  We therefore affirm. 

Background

Facts
Regarding the Offense    

          On
a Saturday in July 2008, Karim Gamil Sirgy Ubaldo, the complainant, met Gill
and Christopher McKnight at a motel room to buy methamphetamine from them.  According to Gill’s statement to the police,
once Ubaldo was seated in the room, McKnight held him by the neck and struck
him in the nose with his gun, while Gill grabbed Ubaldo’s gun from his pants
and restrained him with duct tape.  Gill
and McKnight took Ubaldo’s gun, money, wallet, and watch.  During the night, McKnight made several trips
to his cousin’s house in Ubaldo’s Jeep Cherokee to purchase heroin and to strip
the vehicle of its speakers, stereo and other electronics.  

          According
to Gill, Ubaldo shot himself up with the heroin McKnight purchased and was
still alive when he left the motel room that night.  Gill returned to the motel on Sunday morning.  He claims McKnight, Ubaldo, and he then drove
around in Gill’s car, looking for more drugs. 
Eventually during the morning, they went to McKnight’s cousin’s house to
retrieve Ubaldo’s Jeep, which had been parked there overnight.  Gill and McKnight transferred Ubaldo from
Gill’s car to Ubaldo’s Jeep, along with bloody sheets and blankets from the
motel.  In his statement, Gill maintained
that Ubaldo appeared to be alive at this point, but was not moving.  McKnight left in the Jeep with Ubaldo in the
back of the vehicle.  Gill did not go
with them.  

          On
Sunday evening, Gill met McKnight in another motel room, where they did drugs
into the earlier morning hours of the next day. 
During this time, Gill asked McKnight what happened to Ubaldo, and McKnight
responded that he had taken care of it. 
According to his statement, Gill figured McKnight “disposed of it.”  McKnight later asked Gill if he would follow
him to Galveston to get rid of Ubaldo’s Jeep. 
Gill stated to the police that he assumed that Ubaldo was dead in the
Jeep.  He did not follow McKnight. 

          Around
dawn, Bayou Vista Police Officer M. Bergen arrested McKnight for public
intoxication.  Bayou Vista Police Officer
R. Shannon conducted an inventory search of Ubaldo’s Jeep which the police suspected
McKnight had driven.  Officer Shannon
discovered Ubaldo’s dead body in the back of the Jeep.  Doctor S. Pustilnik, Chief Medical Examiner
for Galveston County, conducted the autopsy on Ubaldo.  He testified that Ubaldo had a broken nose, a
laceration associated with the broken nose, abrasions on the left side of his
scalp, face and arm, and three puncture marks on his arm.  He had five total areas of trauma to his
scalp and one to his face.  Gray
semi-sticky tape residue was on his arms and the right side of his head below
his ear.  Dr. Pustilnik testified that
the downward angle of the tape on his head was consistent with tape across
Ubaldo’s mouth.  

          Three
puncture wounds were on Ubaldo’s right arm, but no track marks indicative of
chronic intravenous drug use were present.  According to the toxicology lab report, Ubaldo
had a lethal amount of morphine. 
Methamphetamine was also in his system. 
Dr. Pustilnik concluded that Ubaldo’s cause of death was a combination
of blunt force trauma, asphyxia and multiple drug intoxications.  He estimated that Ubaldo had been dead for
some time— between eight and forty hours— when he conducted the autopsy several
hours after the police discovered Ubaldo’s body.  

          Sergeant
E. Cazares recovered fingerprints from Ubaldo’s Jeep Cherokee.  A latent impression recovered from the front
passenger’s door window matched Gill’s left thumb print.  He also took swabs from the Jeep for DNA
testing.  The DNA profile from the swabs
from the Jeep’s steering wheel and passenger’s side seat belt could not exclude
Gill as a contributor. 

Facts
Regarding the Alleged Brady Violation       

          During
trial, defense counsel asked Sergeant Echols whether he had requested records
from the cell phone carriers for Ubaldo’s cell phone and for several other
individuals.  Sergeant Echols responded
that he had received the records for those cell phones.  He submitted the records to the
Identification Division at the Sheriff’s Department as evidence.  Defense counsel asked if the records were a
valuable resource to determine what happened in this case.  Sergeant Echols responded that he did not
think the information was valuable.  

          Defense
counsel next questioned Sergeant M. Barry of the Galveston County Sheriff’s
Office about the cell phone records.  He
asked Sergeant Barry whether he was aware Sergeant Echols had subpoenaed the
records.  Sergeant Barry responded that
he was aware that Echols had tried to obtain the records, but that he never
viewed them. 

          Defense
counsel never asked for a continuance to review the phone records during
trial.  Instead, in his closing argument,
he stated: 

There’s a possibility that we could
have verified all this from the cell phone records.  You heard from Sergeant Echols: Yes, I
subpoenaed some cell phone records.  We
recovered some cell phones.  We recovered
some cell phones that belonged to the decedent and some other individuals.  Had those in the records.  Didn’t show them to anybody.  We just kind of held on to them.  Wonder why? 
Could have been beneficial to all of you let you know exactly what was
going on…. No. That wasn’t important. They had their minds made up.

Later during closing argument, defense
counsel said, “[Ubaldo is] free to move around. 
His cell phone is still working.  He
has the ability to call for help.  Send a
text message to someone if something is going on.  Records which we [have] never seen.  But did he? 
We don’t know.”  Finally in his
closing argument, defense counsel argued that the phone records might have shown
that Ubaldo was not murdered.  

          After
a jury convicted Gill and sentenced him, his counsel moved for a new trial
based on the argument that the State never “directly” gave Gill the cell phone
records.  At a hearing on the motion, the
lead prosecutor in the case testified that she knew about the cell phone
records.  She had reviewed the records,
as they were in the State’s file when she began work on the case.  When defense counsel asked her if she had
turned the records over to him, she stated that she assumed that defense
counsel had seen the phone records because the State’s file contained a copy.  She added that the offense report indicated
that the police had obtained phone records. 
She and defense counsel had a meeting at the Sheriff’s Office several
weeks before trial, at which time they went over all the evidence in the case.  She admitted that she did not personally copy
the records and give them to defense counsel. 
She testified that she did not think that the phone records contained
any exculpatory evidence.  

Brady
Violation

          On
appeal, Gill contends that the trial court abused its discretion by denying his
motion for new trial based upon exculpatory information withheld by the
State.  He maintains the State withheld
the cell phone records in violation of his constitutional rights.  See
Brady, 373 U.S. at 87, 83 S. Ct. at
1196-97. 

1.    
Standard of Review 

          An appellate court reviews a trial court's ruling on a
motion for mistrial and motion for new trial using an abuse-of-discretion
standard of review.  Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).  We view the evidence in the light most
favorable to the trial court's ruling and uphold the trial court's ruling if it
was within the zone of reasonable disagreement. Wead v. State, 129
S.W.3d 126, 129 (Tex. Crim. App. 2004).  We
do not substitute our judgment for that of the trial court, but rather we
decide whether the trial court's decision was arbitrary or unreasonable.  Webb,
232 S.W.3d at 112.  Thus, a trial court
abuses its discretion in denying a motion for new trial only when no reasonable
view of the record could support the trial court's ruling.  Charles v. State, 146 S.W.3d 204, 208
(Tex. Crim. App. 2004).

            In Brady, the United States
Supreme Court held that the suppression of evidence favorable to a defendant
violates his due process rights if the evidence is material either to guilt or
punishment, without regard to the good or bad faith of the prosecution.  Brady, 373 U.S. at 87, 83 S. Ct. at
1196-97; Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  To establish a Brady violation, a
defendant must show: (1) the state suppressed evidence; (2) the suppressed
evidence is favorable to defendant; and (3) the suppressed evidence is
material.  Little v. State, 991
S.W.2d 864, 866 (Tex. Crim. App. 1999); Thomas v. State, 841 S.W.2d 399,
402–03 (Tex. Crim. App. 1992) (citing Moore v. Illinois, 408 U.S. 786, 794–95,
92 S. Ct. 2562, 2568 (1972)).  Materiality, incorporated into the third prong,
is a requirement that a defendant must be prejudiced by the state’s failure to
disclose the favorable evidence.  Banks
v. Dretke, 540 U.S. 668, 691, 124
S. Ct. 1256, 1272 (2004).  

          The
Supreme Court subsequently extended Brady to include a duty to disclose
evidence even if the defendant has not requested it, and to include both
impeachment and exculpatory evidence.  United States v. Agurs,
427 U.S. 97, 107, 96 S. Ct. 2392, 2399 (1976); United States v. Bagley,
473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985). 
This duty requires disclosure of favorable evidence known only to the
police; consequently, prosecutors have a duty to learn of Brady evidence
known to others acting on the state’s behalf in a particular case.  Kyles v. Whitley, 514 U.S. 419, 437–38,
115 S. Ct. 1555, 1568 (1995).  It is
irrelevant whether suppression of the favorable evidence was done willfully or
inadvertently.  Strickler v. Greene, 527 U.S. 263, 281–82, 119 S. Ct. 1936,
1948 (1999).   

          

 

 

          2) Brady
Factors 

a. Suppression of
Evidence by the State 

          The
trial court reasonably could have concluded that the prosecutor in this case did
not suppress the cell phone records.  If the State opens its
files for examination by defense counsel, it generally fulfills its duty to
disclose exculpatory evidence.  Harm v. State, 183 S.W.3d 403, 407 (Tex.
Crim. App. 2006).  A prosecutor’s
open-file policy is insufficient, however, if the exculpatory information is
not in the prosecutor’s file.  Harm, 183 S.W.3d at 407.  

          In this case,
the lead prosecutor testified at the hearing on the motion for new trial that
the cell phone records were in the State’s file when she took over the
case.  Further, she indicated that she
opened the State’s file for defense counsel’s review. She testified that she and defense counsel had a meeting
at the Sheriff’s Office several weeks before trial at which time they went over
all the evidence in the case.  Also, she
said she assumed defense counsel examined the phone records because they were
available for review in the State’s file.[1]
 Although defense counsel claims he never
reviewed the records, he could have reviewed the records in
the State’s open file before the trial.  See Givens v. State, 749 S.W.2d 954, 957
(Tex. App.—Fort Worth 1988, pet. ref’d) (finding no Brady violation where prosecutor made State’s file available to
defense counsel and counsel could have reviewed State’s file before trial and
discovered complained-of evidence).  The
trial court reasonably could have concluded that the prosecutor fulfilled her
duty to disclose the cell phone records because of the State’s open file policy
and the fact that the records were made available to defense counsel with the
rest of the state’s file.  See Harm, 183 S.W.3d at 407. 

b) Favorability of the
Evidence to Gill         

          There was no
evidence that the cell phone records were exculpatory.  Gill contends on appeal that they would have
shown that Ubaldo was alive when Gill last saw him and died of a self-inflicted
drug overdose or solely at the hands of McKnight.  At trial, he did not, however, request a
continuance to review the cell phone records. 
Once the cell phone records were disclosed at trial, had he not had an
opportunity to review them, Gill should have requested
a continuance.  See Apolinar v. State, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st
Dist.] 2003) (“When evidence withheld in violation of Brady
is disclosed at trial, the defendant’s failure to request a continuance waives
the error or at least indicates that the delay in receiving the evidence was
not truly prejudicial”) aff'd, 155 S.W.3d 184 (Tex. Crim. App. 2005).  He did not do so.     

 

 

c) Materiality of the Evidence 

          The trial court also reasonably
could have concluded that
the cell phone records were not material. 
“The mere possibility that an item of undisclosed information might have
helped the defense, or might have affected the outcome of the trial, does not
establish ‘materiality’ in the constitutional sense.”  Hampton v. State, 86 S.W.3d 603, 612
(Tex. Crim. App. 2002) (quoting Agurs, 427 U.S. at 109–10, 96 S. Ct. at
2400).  Rather, the inquiry is whether the
State’s failure to disclose the evidence undermines the confidence in the jury’s
verdict.  See Lempar v. State, 191
S.W.3d 230, 241 (Tex. App.—San Antonio 2005, pet ref'd) (citing Ex parte
Richardson, 70 S.W.3d 865, 870 n.22 (Tex. Crim. App. 2002)); see also
Thomas, 841 S.W.2d at 404 (Tex. Crim. App. 1992) (quoting Bagley, 473 U.S. at 682, 105 S. Ct. at
3383) (“The evidence is material only if there is a reasonable probability
that, had the evidence been disclosed to the defense, the result of the
proceeding, would have been different. A
‘reasonable probability’ is a probability sufficient to undermine confidence in
the outcome.”).  

          In
this case, Gill contends that the cell phone records are material because they
would show that Ubaldo was alive and using his phone after Gill last saw him on
Sunday morning.  Thus, the records would
support his defensive theory that McKnight killed Ubaldo alone without Gill’s
assistance sometime after Gill concluded his involvement.  Even had this argument been timely made, the
cell phone records would have been cumulative of other evidence at trial.  Two witnesses, Lacey Runnels and Christine
Crutcher, testified that Ubaldo contacted them with his cell phone in the
afternoon hours of Sunday and the early morning hours of Monday, after Gill
contends he last saw Ubaldo.  Runnels, Ubaldo’s friend, testified
that she received a text message from Ubaldo’s phone Sunday afternoon, stating,
“Sorry. Had to go back to California to help out some family.”   Christine Crutcher, Ubaldo’s
girlfriend, testified that she
called him on his cell phone around three or four in the morning on Monday, the
day police discovered Ubaldo’s body, and spoke with him.  Because these witnesses testified,
independent of the cell phone records, that Ubaldo used his cell phone after
Gill last saw him on Sunday morning, the trial court
reasonably could have concluded that no reasonable probability existed that, had the cell phone
records been disclosed to Gill, the result of the proceeding would have been
different. 

 

 

 

 

 

 

 

Conclusion

We hold that the trial court did not abuse its
discretion in denying Gill’s motion for new trial because Gill failed to meet his burden to show that a Brady violation occurred.  We therefore affirm the judgment of the trial
court.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Keyes,
Higley, and Bland.

Do not publish. 
Tex. R. App. P. 47.2(b).











[1]
The parties do not dispute that the State has an open file policy.  In addition, in regard to a different
evidentiary matter, the assistant prosecutor for the case stated, “I believe we
have an open file policy.”