# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-24-00149-CR

---

Rodney Allen Williams,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
443rd District Court of Ellis County, Texas
Judge Grace Pandithurai, presiding
Trial Court Cause No. 49263CR

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

### MEMORANDUM OPINION

Appellant Rodney Allen Williams was found guilty of one count of aggravated sexual assault of a child and two counts of indecency with a child. The jury found the enhancement paragraphs to be true and assessed Williams's punishment at confinement for life on each of the three counts. The trial court sentenced him accordingly and ordered the sentences to run consecutively. This appeal ensued. In a single issue, Williams argues that the

trial court abused its discretion by limiting his cross-examination of the complainant regarding prior accusations. We affirm.

## A. Background Facts

At the time of trial, C.F.[1] was twenty-one years old. Before C.F. was born, her mother was in a relationship with Williams, and they had a child together, A.W. C.F.'s mother then began a relationship with C.F.'s father, and they had two children—C.F. and her brother. After Mother and Father divorced, Mother and Williams became involved again. C.F. testified that when she was around nine years old, she lived with Mother, Brother, and Williams in a two-bedroom home in Waxahachie. C.F. and Brother shared one bedroom, and Mother and Williams shared the other bedroom.

C.F. testified about several encounters with Williams while they lived together in Waxahachie. She recalled that one night she woke up and Williams was touching her vagina with his fingers underneath her clothes. There was a loud noise, and Williams stopped and left the room. C.F. did not tell anyone what had happened. Another time, C.F. was again in her room asleep, and when she woke up, Williams was "tapping" his private part against C.F.'s private part underneath her clothes. C.F. asked Williams to stop, but he did

---

[1]Because she was a minor at the time of the offense, we will use initials to refer to the complainant to protect her identity. We will identify family members by initials or their relationship to the complainant.

not. When she tried to get away, Williams pushed C.F. against the wall and put his hands around her throat. On that same night, Williams attempted to put his private part inside of C.F.'s private part. She described that Williams's private went inside of her private "a little bit," and she started crying because it hurt. C.F. said that on another occasion she and Brother were asleep in the living room, and she was awakened when she felt Williams's private part against her ear.

C.F. testified that she told her half-sister, A.W., that Williams had put his private part against her ear, but A.W. did not believe her. She said that A.W. told their grandmother what C.F. had said, and both A.W. and her grandmother laughed and joked about it. C.F. did not tell anyone else because she did not think that anyone would believe her. A.W.'s trial testimony was consistent with C.F.'s. She testified that when C.F. was eight or nine years old, she told her that Williams had put his private part in her ear, and A.W. told her grandmother what C.F. had said. A.W. stated on cross-examination that C.F. "told a lot of lies growing up."

C.F. testified that the encounters with Williams occurred over several months when she was around nine years old. At some point, Williams moved out of the house, and C.F., Mother, and Brother eventually had to move as well. While they were packing to move, A.W. told Mother what C.F. said had

happened with Williams. Mother took C.F. to another room, and C.F. told Mother generally what had happened. Mother told C.F. that she would take care of it. According to C.F., she never saw Williams again after he moved out of the house. Mother testified at trial that after C.F. told her what had happened, she made a police report. There was no evidence of that report admitted at trial.

C.F., Mother, and Brother moved to another town. Mother and Father reconciled, and Father lived with them for a short time. After Mother and Father ended their relationship, Mother began dating a man named Jarvis who eventually moved into their home.

When she was in high school, C.F. told her school counselor what had happened with Williams. The school counselor notified local law enforcement, and the case was referred to the Ellis County Sheriff's Office. C.F. went to the Ellis County Children's Advocacy Center for a forensic interview.

Investigator Joshua Key, with the Ellis County Sheriff's Office, observed the interview. He testified at trial that C.F. said Williams "did bad things to her" when she was around nine years old. Investigator Key said C.F. told the forensic interviewer that Williams had touched her private area with his hand on more than one occasion. She also said during the interview that Williams had attempted to put his private part in her private part.

## B. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

## C. Authority

Rule 412 of the Texas Rules of Evidence provides that in prosecutions for sexual assault offenses, reputation or opinion evidence of the victim's past sexual behavior and specific instances of the alleged victim's past sexual behavior are generally not admissible. *See* TEX. R. EVID. 412. A defendant may not offer evidence of a specific instance of an alleged victim's past sexual behavior unless the court:

> (A) on a motion by the defendant made outside the presence of the jury, conducts an in camera examination of the evidence in the presence of the court reporter; and
>
> (B) determines that the probative value of the evidence outweighs the danger of unfair prejudice to the alleged victim and that the evidence:
>
> (i) is necessary to rebut or explain scientific or medical evidence offered by the attorney representing the state;

> (ii) concerns past sexual behavior with the defendant and is offered by the defendant to prove consent, if the lack of consent is an element of the offense;
>
> (iii) relates to the alleged victim's motive or bias;
>
> (iv) is admissible under Rule 609; or
>
> (v) is constitutionally required to be admitted.

TEX. R. EVID. 412(d).

### D. Discussion

In his sole issue, Williams argues that the trial court abused its discretion when it prohibited him from cross-examining C.F. about a prior accusation.

The trial court held an in camera hearing as required by Rule 412. *See* TEX. R. EVID. 412(d)(2)(A). At the hearing, C.F. explained that after her parents separated, Mother was in a relationship with Williams. After that relationship ended, Mother resumed a relationship with Father. When Mother and Father separated for the second time, Mother began a relationship with Jarvis, and they were still in a relationship at the time of trial.

C.F. testified that she liked Jarvis at first, but things changed. Williams's counsel asked C.F. whether she had made an outcry against Jarvis, and she replied that she had. C.F. stated that she moved out of the home before

she made the outcry against Jarvis. Williams's counsel asked C.F. if she made the outcry against Jarvis because she was trying to get him out of her life. C.F. responded, "No."

William's counsel argued that C.F. made the outcry against him because she wanted her parents to get back together. Counsel reasoned that she also made the outcry against Jarvis to get him out of Mother's life. Counsel argued to the trial court that the evidence of the outcry against Jarvis was important to the defense to show that C.F. "uses this motive to get these people out of her life." He sought to introduce the past allegation against Jarvis to establish that pattern. The trial court excluded evidence of C.F.'s past outcry against Jarvis because the record does not show that the allegation was false.

Evidence of false prior accusations may be admissible to show a victim's motive or bias against the defendant. *Hammer v. State*, 296 S.W.3d 555, 566 (Tex. Crim. App. 2009). While evidence of prior accusations of sexual abuse may be admissible to impeach the credibility of a complainant, there must be a showing that such evidence is probative. *Aleman v. State*, No. 07-23-00142-CR, 2024 WL 952066, at *3; *Lempar v. State*, 191 S.W.3d 230, 239 (Tex. App.—San Antonio 2005, pet. ref'd). In order to be considered probative, there must be evidence that the prior accusations were similar to the accusations in the instant case and that the prior accusations were false. *See Lopez v. State*, 18

JS.W.3d 220, 226 (Tex. Crim. App. 2000); *Aleman,* 2024 WL 952066 at *3; *Lempar,* 191 S.W.3d at 239. There was no evidence that C.F.'s prior accusation against Jarvis was false. *See Biggers v. State,* No. 10-16-00064-CR, 2017 WL 1540708 at *4 (Tex. App.—Waco April 26, 2017, no pet.) Therefore, the evidence was not probative to show a pattern that C.F. would make a false accusation in order to get a person out of her life. *See id.* We cannot conclude that the trial court abused its discretion by excluding the requested evidence and prohibiting Williams from cross-examining C.F. about the past accusation. *See id.* We overrule Williams's sole issue.

## E. Conclusion

We affirm the trial court's judgment.

---

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: January 8, 2026

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do Not Publish
CRPM

