NO. 07-07-0377-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 9, 2009

_____

DEWEY MACK EVANS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 19,095-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Dewey Mack Evans, was convicted by a jury of aggravated kidnapping, enhanced, and sentenced to eighty years confinement. Appellant contends (1) the State failed to timely disclose evidence favorable to him; (2) the trial court erred by failing to compel the State to elect between two offenses contained in a single count indictment; (3) the trial

court erred by admitting evidence of his prior felony convictions during the guilt/innocence phase of his trial; (4) the evidence was legally and factually insufficient because the State failed to prove the geographic location of the offense; and (5) the State made improper closing arguments. We affirm.

## Background

On May 17, 2006, Cecily Tripplehorn[1] went to John Stiff Memorial Park in Amarillo, Randall County, Texas to roller blade and watch her boyfriend play softball. Shortly after 10:00 p.m., she tired of roller blading and returned to her boyfriend's pickup truck to change back to her tennis shoes. She was sitting in the front passenger seat of her boyfriend's truck when she noticed Appellant sitting in the driver's seat of the adjacent truck.[2] After drinking some water, Tripplehorn decided to roller blade one more lap around the ballfield and exited the truck preparing to make her way to the paved sidewalk.

According to Tripplehorn's trial testimony, she had taken one or two steps when Appellant grabbed her from behind, pulled her backwards, and threw her into his truck. While she was lying on the bench seat, her legs were hanging out the door on the driver's side. She was kicking and screaming. Appellant produced a knife, held it to her throat, and threatened

---

[1]When the offense was committed, Tripplehorn's last name was Wilkinson.

[2]Appellant was driving a three-quarter ton white Ford pickup with a flatbed containing work-related machinery, *i.e.,* air compressor, cutting torch, and tool boxes. The company name of Appellant's employer was displayed on the cab doors.

2

to kill her if she did not get in the truck. She grabbed the knife's blade with her bare hand and forced it away from her throat. Appellant repeatedly struck her face and attempted to put his hand over her mouth.

Alvino Alvarez, a softball umpire, was walking toward the parking lot when he heard screams and responded. From a vantage point six feet away, he observed Appellant standing over Tripplehorn. She was partially in the floorboard area of the truck with her legs hanging out—dangling over the pavement. Alvarez hollered, "What is going on?" Appellant released Tripplehorn and she managed to escape. Alvarez then led her away toward the ballfield entrance. She had blood on her hands, face, and shirt. He looked back to see Appellant staggering, looking for his keys, and attempting to get in his truck.

As Alvarez brought Tripplehorn to the ballpark entrance, Lori Dunavin and Michael DeBault were leaving. They heard someone yell that Tripplehorn had been assaulted and observed Appellant backing his truck out of a parking space. Before Appellant could pull away, DeBault ran up to the driver's side window and yelled for him to stop. Dunavin positioned herself in front of Appellant's truck to prevent him from driving away. Appellant pulled away from DeBault and successfully avoided striking Dunavin. Alvarez, Dunavin, and DeBault subsequently identified Appellant from photograph arrays and at trial.

Amarillo Police Department Officers Thomas Higgins and Don Sanders responded to a dispatch regarding an incident at the ballfield. When they arrived, they observed that Tripplehorn had cuts on her hands and face. She was extremely upset and crying.

3

Nevertheless, Higgins took her oral statement. Later, at the hospital, Higgins wrote out a written statement per Tripplehorn's directions describing the incident a second time.

Immediately following the incident, Appellant left the park and drove to the Red Oak Apartments where he abandoned his truck after locking his cell phone and keys inside. When he could not re-enter the truck, he embarked on an hour long walk to Richard Holt's house. When he arrived at Holt's house, he told Holt that he had wrecked his truck and needed a ride home. Before arriving at his house, Appellant told Holt not to stop if the police were there.

APD Officer Everett England processed Appellant's abandoned truck at the apartment complex. England identified a blood stain in the central area of the horizontal portion of the bench seat. He also recovered a red, white, and blue "do rag" identified by witnesses as the "do rag" worn by Appellant during the incident. Appellant's employer identified the truck as one regularly assigned to Appellant and the truck Appellant drove home from work that day. The truck was also identified by witnesses at the park.

APD Detectives Landrum and Higley went to Appellant's home the day after the incident. With the consent of Appellant's wife, they searched the residence and located a bloody white t-shirt matching the description of the shirt worn by Appellant the day of the incident. Appellant was not at home, did not show up for work after the incident, and was later arrested by United States Marshals in Oklahoma City, Oklahoma.

**Issue No. 1 - Exculpatory Evidence**

Appellant contends his constitutional due process rights were affected by the State's failure to timely disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he asserts the State failed to timely disclose that Tripplehorn had changed her version of the events preceding her abduction, thereby depriving him of the opportunity to adequately cross-examine APD officers Higgins and Sanders. He also asserts that he was entitled to a mistrial because Tripplehorn's inconsistent testimony amounted to perjury and the State suborned her perjury.

In the two statements given by Tripplehorn the night of the incident, she indicated that Appellant grabbed her while she was sitting in her boyfriend's truck and was yanked from the vehicle. At trial, however, Tripplehorn testified she had exited the truck and stepped toward the sidewalk when Appellant grabbed her from behind. She also testified that she notified the State that her statements were incorrect in this one aspect several months prior to trial. Appellant contends the State did not inform him of this change in Tripplehorn's story and that the first time he learned of this change was during the State's opening statement.

**A.    *Brady***

Under *Brady*, the prosecution has an affirmative duty to disclose favorable material evidence to the defense. *Brady*, 373 U.S. at 87. The duty to disclose *Brady* evidence encompasses both exculpatory and impeachment evidence. *Harm v. State,* 183 S.W.3d 403,

5

406 (Tex.Crim.App. 2006). Exculpatory evidence is evidence that tends to justify, excuse, or clear the defendant from alleged fault or guilt, while impeachment evidence is evidence offered to dispute, disparage, deny, or contradict other testimonial evidence. *Michaelwicz v. State*, 186 S.W.3d 601, 613 (Tex.App.–Austin 2006, pet. ref'd). While the discrepancy between Tripplehorn's pretrial statements and her trial testimony was not exculpatory, it might have been used for impeachment purposes, therefore, the prosecution had an affirmative duty to timely disclose that evidence.

When *Brady* evidence is not concealed, but disclosure is untimely, a defendant bears the burden to show that he was prejudiced by the tardy disclosure. *United States v. McKinney,* 758 F.2d 1036, 1050 (5th Cir. 1985); *Wilson v. State,* 7 S.W.3d 136, 146 (Tex.Crim.App. 1999); *Little v. State*, 991 S.W.2d 864, 86 (Tex.Crim.App. 1999); *State v. DeLeon,* 971 S.W.2d 701, 705-06 (Tex.App.–Amarillo 1998, pet. ref'd). To demonstrate reversible error for a *Brady* violation, a defendant must show (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the withheld evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Harm,* 183 S.W.3d at 406; *Salazar v. State*, 222 S.W.3d 10, 14 (Tex.App.–Amarillo 2006, pet. ref'd). Moreover, in evaluating whether the outcome of the trial would have been different, we must consider all the other evidence adduced at trial. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex.Crim.App. 2002).

6

Appellant claims that, had he known Tripplehorn was going to change her account of the events, he might have cross-examined Officers Higgins and Sanders differently. Appellant does not, however, explain how he would have cross-examined the officers differently had he been aware sooner. "'The mere possibility that an item of undisclosed information *might* have helped the defense, or *might* have affected the outcome of the trial, does not establish 'materiality' in a constitutional sense.'" *Hampton*, 86 S.W.3d at 612 (quoting *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)) (emphasis added).

If a defendant receives *Brady* evidence in time to put it to effective use at trial, the conviction should not be reversed simply because it was not disclosed as early as it might or should have been. *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex.App.–Houston [14th Dist.] 2005, no pet.); *DeLeon*, 971 S.W.2d at 706. Here, Appellant was made aware of Tripplehorn's change of testimony at the outset of trial. The record reflects that Appellant used Tripplehorn's inconsistent testimony during the cross-examination of both Higgins and Sanders. Appellant also vigorously cross-examined Tripplehorn on the inconsistency and even inferred she perjured herself. During his closing statement, Appellant repeatedly recounted Tripplehorn's inconsistent statement in detail while attacking her credibility.

Accordingly, we find that Appellant received notice of the change in Tripplehorn's account in time to make effective use of it at trial. Our finding that Appellant was not prejudiced by Tripplehorn's change of testimony is also buttressed by the fact that Appellant

7

did not ask for a continuance after learning that Tripplehorn would be changing her testimony. See *State v. Fury*, 186 S.W.3d 67, 74-75 (Tex.App.–Houston [1ˢᵗ Dist.] 2005, pet. ref'd); *DeLeon,* 971 S.W.2d at 706.

Appellant also contends the late disclosure affected his ability to prepare his defense because, if Tripplehorn's later account had been disclosed earlier, he might have investigated further and discovered favorable witnesses, *i.e.,* the initial abduction occurred next to the sidewalk in view of the ballfield as opposed to inside the truck. The mere possibility that Appellant could have discovered more information is not sufficient to undermine confidence in the outcome of the proceeding. *See Lempar v. State,* 191 S.W.3d 230, 241 (Tex.App.–San Antonio 2005, pet. ref'd); *Olivarez*, 171 S.W.3d at 271; *Haygood v. State*, 127 S.W.3d 805, 810 (Tex.App.–San Antonio 2003, pet. ref'd). This is particularly so here where Appellant also testified that Tripplehorn was initially standing between the trucks prior to any altercation. *See Morrow v. Dretke*, 367 F.3d 309, 320 (5ᵗʰ Cir. 2004). Having reviewed the other evidence produced at trial, we cannot say that there is a reasonable probability that had the evidence been more timely disclosed, the outcome of the trial would have been different.

## B. Perjury

Appellant also asserts the trial court erred in not granting a mistrial based on Tripplehorn's inconsistent accounts or alleged perjury. In reviewing a trial court's denial of a motion for mistrial, or for new trial, we determine whether it abused its discretion. *See Yates*

*v. State*, 171 S.W.3d 215, 220-21 (Tex.App.–Houston [1ˢᵗ Dist.] 2005, pet. ref'd). If the trial court's decision falls within the zone of reasonable disagreement, we will affirm. *Wead v. State,* 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). Reversal is warranted only where the trial court acted arbitrary or unreasonably. *See State v. Read*, 965 S.W.2d 74, 77 (Tex.App.–Austin 1999, no pet.).

A charge of perjury is a serious accusation that must be clearly supported by the evidence. *Haywood v. State,* 507 S.W.2d 756, 760 (Tex.Crim.App. 1974). While it is clear that the State may not obtain a conviction through the knowing use of perjured testimony, Appellant bears the burden of showing that the testimony used by the State was in fact perjured. *Losada v. State*, 721 S.W.2d 305, 311 (Tex.Crim.App. 1986). Perjury requires, in part, that a person make a false statement under oath with "intent to deceive and with knowledge of the statement's meaning." Tex. Penal Code Ann. § 37.02(a)(1) (Vernon 2003). Here, the alleged perjury is the discrepancy between Tripplehorn's two prior statements and her trial testimony. Appellant has not shown that this alleged perjury was made with an intent to deceive rather than being a mere misjudgement of the sequence of events or an otherwise innocent misstatement due to the traumatization of the witness at the time the statement was made.

"Discrepancies in testimony alone do not make out a case for perjury." *Losada*, 721 S.W.2d at 312; *Williams v. State*, 513 S.W.2d 54, 56 (Tex.Crim.App. 1974). We have examined the record carefully and conclude, as a matter of law, that the charge of perjury is

not shown. At best, Tripplehorn's credibility was an issue to be determined by the jury. The State did nothing more than present evidence to show that Tripplehorn had changed her account. We find the trial court did not abuse its discretion in not granting a mistrial. Appellant's first issue is overruled.

**Issue 2 - Election between Two Offenses**

Appellant asserts the trial court erred by failing to compel an election by the State between two offenses contained in a single count indictment. The indictment alleges, in pertinent part, the following:

> that Appellant . . . did then and there intentionally and knowingly abduct another person, to-wit: Cecily [Tripplehorn] and without Cecily [Tripplehorn's] consent did then and there restrain Cecily [Tripplehorn] with intent to prevent her liberation *by using and threatening to use* deadly force, and the said defendant did then and there, during the commission of the offense, use and exhibit a deadly weapon, to-wit: a knife. . . .

(Emphasis added).

A person commits the offense of aggravated kidnapping if "he intentionally or knowingly *abducts* another person" with the appropriate intent. Tex. Penal Code Ann. § 20.04(a) (Vernon 2003) (emphasis added). The term "abduct" means "to restrain a person with intent to prevent his liberation *by . . . using or threatening to use deadly force*." Tex. Penal Code Ann. § 20.01(2) (Vernon Supp. 2008) (emphasis added).

10

Contrary to Appellant's contention, the indictment contains only one offense. The alternative methods of restraining a person described in § 20.01(2) of the Texas Penal Code are merely the "manner and means" of engaging in the act of abduction. *See Curry v. State*, 30 S.W.3d 394, 403 (Tex.Crim.App. 2000), *overruled on other grounds by, Golihar v. State,* 46 S.W.3d 243, 256-57 (Tex.Crim.App. 2001). Alternate pleadings of different methods of committing one offense may be charged in a single indictment. *Bagheri v. State,* 119 S.W.3d 755, 762 n.5 (Tex.Crim.App. 2003). Thus, the trial court did not abuse its discretion in denying Appellant's motion to compel election. Appellant's second issue is overruled.

**Issue 3 – Prior Felony Convictions**

Appellant contends he was denied due process by the introduction of two prior felony convictions into evidence at the guilt/innocence phase of trial. After Appellant testified at trial, the State sought to introduce evidence of Appellant's 1992 convictions for burglary and robbery for impeachment purposes under Rule 609(a) of the Texas Rules of Evidence.[3] The trial court held a hearing to determine whether the impeachment evidence was admissible under Rule 609. The State presented its arguments in favor of admission, including its argument pertaining to the remoteness of the convictions. Appellant agreed that the convictions were not "stale"; however, he did object to their admission, arguing that the

---

[3]For convenience, we will cite specific Rules of the Texas Rules of Evidence hereafter as "Rule ___."

11

convictions were irrelevant and entirely prejudicial. On appeal, he asserts for the first time that the prior convictions were inadmissible under Rule 404(b).[4]

When a party seeks to introduce prior felony convictions as impeachment evidence, Rule 609 is applicable. *Theus v. State*, 845 S.W.2d 874, 880-82 (Tex.Crim.App. 1992); *Baca v. State*, 223 S.W.3d 478, 483-84 (Tex.App.–Amarillo 2006, no pet.). Rule 609(a) requires the trial court to conduct a balancing test weighing the probative value of the conviction against the prejudicial effect. When conducting the balancing test required by Rule 609(a), the relevant inquiry is (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Theus*, 859 S.W.2d at 880; *Baca*, 223 S.W.3d at 484.

As to the impeachment value of the prior convictions, the offenses of burglary and robbery are considered deceptive in nature. *See id.* at 484; *White v. State*, 21 S.W.3d 642, 647 (Tex.App.–Waco 2000, pet. ref'd). Because these prior offenses are relatively dissimilar to the instant charge, there is a reduced tendency on the part of the jury to associate those offenses with a propensity to commit the instant offense. Furthermore, because Appellant was the only defense witness who could testify to certain aspects of the incident at the ballpark

---

[4]Because Appellant did not raise this objection below, this issue was waived. *See* Tex. R. App. P. 33.1; *Santellan v. State*, 939 S.W.2d 155, 171 (Tex.Crim.App. 1997).

and the believability of his version was critically important to whether he committed the offense, the State's need for the impeachment evidence was significant. *Theus*, 845 S.W.2d at 880-82. Accordingly, under these circumstances, we find the trial court did not abuse its discretion in admitting the prior convictions because the probative value of the evidence outweighed its prejudicial effect. Issue three is overruled.

**Issue 4 – Legal and Factual Sufficiency**

Appellant contends the evidence is legally and factually insufficient to support his conviction because the State failed to offer any evidence indicating geographic location where the offense occurred. We disagree.

The standards by which we review the sufficiency of the evidence are set forth in *Jackson v. Virginia,* 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006). We refer the parties to these cases for explanation.

In this case a number of witnesses testified that the incident occurred at John Stiff Memorial Park, and Officer Higgins testified that the park is located in Randall County, Texas. Issue four is overruled.

**Issue 5 – Closing Argument**

Appellant contends that, during closing argument, the State improperly asserted that Appellant had the burden to disprove the State's case and commented on Appellant's

constitutional right to remain silent.  At trial, the following arguments were made in closing by defense counsel, in pertinent part, as follows:

> DEFENSE COUNSEL: They collected that blood evidence over a year ago and they didn't bring you any of the evidence of whose blood that is.  Dewey says he assumes it's probably mostly Cecily's, but it could have been his, too, because he was bleeding.  If they had DNA evidence from inside the cab of Dewey Evans' truck showing Cecily [Tripplehorn] had been in there, don't you think you would have it?  Don't you wonder why you don't have it?  Because it doesn't help the State's case.  So we'll just gloss over that.  We'll say there was some blood in there, but we won't say what.

> DEFENSE COUNSEL:  And you know the way the District Attorney's Office was in collusion in this lie that Ms. Tripplehorn told you, because that sworn affidavit has been in the file for over a year with her first story that I was dragged out of the truck.  But when Ms. Austin gave you her opening remarks, she told you a story that mirrored what came out of this witness stand, not what was in the file.  They knew what she was going to say, they knew she had changed her story.

The prosecution responded in rebuttal, in pertinent part, as follows:

> PROSECUTOR:  As we talked in voir dire—I talked to you about the fact that the Defense is not compelled to put on anything, but they certainly have that opportunity.  And if they think that something is important for you to know, then they certainly have that opportunity to do that.  And they have had access to the file and the evidence in this case for well over a year, and if they believe that by testing that blood for some kind of DNA that was going to benefit the Defense, they certainly had an opportunity to test that—

> DEFENSE COUNSEL: Objection, Your Honor, that is improper argument and it suggests to this Jury that we had a burden to disprove some issue of the State's case and we move for mistrial.

> COURT: I don't believe he said that – had a burden, I think he said opportunity.  It's overruled.

> PROSECUTOR: Thank you, Judge.  Absolutely no burden whatsoever.  But if they want to sit here and complain about we didn't do something, they had an opportunity to do that.  And it's interesting and ironic that the Defense will

14

nitpick any discrepancy whatsoever in witness statements and testimony that they've had access to for over a year and this is the first time Mr. Evans has given his version. See, the discovery stuff isn't reciprocal, I don't have the benefit of discussing the testimony with Mr. Evans a year ago, a week ago, a month ago. . . .

DEFENSE COUNSEL: Object. That is a comment on my client's right to not have testified at any point before this trial, Your honor.

COURT: Overruled

In essence, Appellant contends he was entitled to a mistrial because the State inferred in closing that Appellant had an opportunity to test the blood in the cab of his truck to determine whether the blood belonged to him or Tripplehorn. In his closing, Appellant attempted to persuade the jury that the State did not run a DNA test on the blood found in the cab of his truck because the test results would not support the State's case, *i.e.,* the test results would show that the blood in the cab was solely Appellant's blood and support an inference that Tripplehorn was never in Appellant's truck contrary to the testimony by Tripplehorn and Alvarez. The State subsequently responded that Appellant also had an opportunity to run a DNA test on the blood to determine whose blood was in the cab of Appellant's truck, *i.e.,* because neither party conducted a DNA test on the blood, any inference would cut in both directions.

Proper jury argument must fall within one of the following categories: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to arguments by opposing counsel, and (4) pleas for law enforcement. *Lange v. State,* 57 S.W.3d 458, 466

15

(Tex.App.–Amarillo 2001, pet. ref'd) (citing *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. 1980)).

Improper jury argument constitutes reversible error only if, in light of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new and harmful facts into evidence. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex.Crim.App. 1996); *Fant-Caughman v. State,* 61 S.W.3d 25, 28 (Tex.App.–Amarillo 2001, pet. ref'd). Here, the State's argument was permissible because it answered an argument of opposing counsel. *See Bailey v. State*, 804 S.W.2d 226, 228 (Tex.App.–Amarillo 1991, no pet.) (citing *Bell v. State,* 724 S.W.2d 780 (Tex.Crim.App. 1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987)). Where defense counsel invites argument as Appellant did here, it is appropriate for the State to respond. *See Sandoval v. State*, 52 S.W.3d 851, 858 (Tex.App.–Houston [1st Dist.] 2001, pet. ref'd). We find the State's argument was not extreme or manifestly improper and the trial court did not abuse its discretion by refusing to grant a mistrial. This is particularly so where the State qualified its statements with the preface that Appellant was not required to put on any evidence.

Appellant also asserts the State improperly commented on Appellant's post-arrest exercise of his right to remain silent. In his closing argument, Appellant argued that Tripplehorn lied when she changed her account of how the abduction began and committed perjury in collusion with the State at trial. The State responded by explaining that it did not

16

have the benefit of a prior version of how the abduction occurred from Appellant's perspective because the first time Appellant gave his version of how the incident transpired was at trial.

A comment on a defendant's post-arrest silence is akin to a comment on a defendant's failure to testify at trial because it raises an inference of guilt arising from the invocation of a constitutional right. *Dinkins v. State,* 894 S.W.2d 330, 356 (Tex.Crim.App. 1995). For a prosecutor's comment on a defendant's post-arrest right to remain silent to violate the defendant's rights and constitute reversible error, the argument must do more than merely imply or indirectly allude to the defendant's failure to testify. *See Busby v. State,* 253 S.W.3d 661, 666 (Tex.Crim.App. 2008) The test is whether the comment was "manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* (quoting *Cruz v. State,* 225 S.W.3d 546, 548 (Tex.Crim.App. 2007)).

When viewed from the jury's standpoint, the State's argument in this respect does not qualify as a clear and direct comment on Appellant's exercise of his post-arrest right to remain silent. The State's argument was merely a response to the arguments of opposing counsel. Under these circumstances, we do not believe the comment was manifestly intended as a comment on Appellant's exercise of a constitutional right, nor was it of such a character as would cause a jury to necessarily and naturally draw an inference of guilt from the implication that Appellant exercised that right.

Furthermore, even assuming this one sentence remark were an improper comment on Appellant's post-arrest silence, any alleged error was harmless. Tex. R. App. P. 44.2(a). The prosecutor's comment did not contribute to Appellant's conviction or punishment beyond a reasonable doubt because: (1) Appellant testified at trial, (2) the comment was responsive to Appellant's argument, (3) the comment was, at best, an indirect comment on Appellant's exercise of his right to remain silent, (4) the statement did not reflect on Appellant's credibility, and (5) the statement was made at the beginning of the State's rebuttal argument and was not repeated or otherwise emphasized during the remainder of the trial. Issue five is overruled.

## Conclusion

Having overruled all of Appellant's issues, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.