*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-07-00820-CR

Jim **BRITE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2006CR5362
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Rebecca Simmons, Justice

Delivered and Filed:   June 10, 2009

AFFIRMED

Jim Brite was convicted by a jury of aggravated sexual assault of a child, sexual assault of

a child, and three counts of indecency with a child. Brite presents nine issues on appeal contending:

(1) the evidence is legally and factually insufficient to support the convictions; (2) the trial court

abused its discretion in failing to determine whether one of the complainants understood the oath to

tell the truth; (3) the trial court abused its discretion in allowing an officer to testify as an expert in

interpreting "gesture clusters;" (4) the trial court abused its discretion in admitting evidence of offenses barred by limitations; (5) the trial court abused its discretion in preventing the defense from presenting evidence of alternative explanations for one of the complainant's behavior; (6) the State engaged in improper bolstering of its witnesses; (7) Brite's double jeopardy rights were violated; (8) the charge did not require the jury to reach a unanimous verdict; and (9) the trial court erred in overruling Brite's objection to the State's improper parole law references during closing argument of the punishment phase of trial. We affirm the trial court's judgment.

SUFFICIENCY

In determining the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Id.* at 9.

At the time of trial, Nancy M., the mother of S.M., who was one of the complainants, was separated from her husband Rick M., who was S.M.'s father. Brite was the boyfriend of S.M.'s

paternal grandmother. Nancy M. initially liked Brite, and he attended numerous family outings. In October or November of 2005, Nancy M. and Rick M. were having marital problems, and Rick M. moved to his mother's house. S.M. and her siblings would visit Rick M. at their grandmother's house, and they stayed the night approximately five times. In December of 2005, S.M.'s younger sister, C.M., who was three or four years old, told Nancy M. something that made her concerned. Nancy M. asked S.M., who was approximately seven years old, about the information, and S.M. told her that "she was sleeping and that she woke up and [Brite] touched her middle." Nancy M. set up an appointment for S.M. to see a counselor, Mary Ann Harris, on December 28, 2005. After Harris spoke with S.M., she instructed Nancy M. that she needed to call child protective services and make a police report. Harris referred Nancy M. to Child Safe where S.M. was interviewed on videotape and medically evaluated. S.M. started counseling with Marianne Torres and continued in counseling for a little over a year. Nancy M. did not immediately call the police, but eventually both Nancy M. and S.M. gave statements to Detective Lisa Miller. Nancy M. testified that the incident made S.M. scared and angry and caused her to have trouble sleeping. Nancy M. admitted that her separation from Rick M. also could cause S.M. to be angry and have trouble sleeping. Nancy M. further stated that S.M. would express anger towards Rick M. because he would yell at S.M. and sometimes curse her with profanity.

S.M., who was nine years old at the time of trial, testified that in October or November of 2005, she was sleeping on the couch at her grandmother's house, and Brite "put his hand in [her] pants" and touched her private part, which she stated was her vagina, underneath her panties. S.M. stated Brite's hand was touching the skin of her private part. Although S.M. told Brite to stop, he continued touching her. S.M. said when Brite touched her, his hand would stay still. S.M. did not

tell anyone because she thought her mom would get mad at her. S.M. said Brite touched her about four times. S.M. recalled one time when Brite was eating hot wings, and "he touched [her] there and it started to burn." Brite told her to get a washcloth and put it on her "middle" so it would stop burning. S.M. said she told her little sister because she was afraid to tell her mom. S.M. testified that no one told her to say bad things about Brite or told her to make up stories about him because they were mad at him. In response to whether Brite's "fingers were on the outside of her private part or something else," S.M. responded that she did not remember.

Detective Lisa Miller took Nancy M.'s statement and sent S.M. to Child Safe for a medical evaluation and interview. On March 6, 2006, Detective Miller interviewed S.M. and later interviewed Brite on March 26, 2006. Detective Miller testified that Brite did not respond directly to her questions but qualified his answers. For example, Brite would respond that he "cannot see myself doing that" or "I don't remember doing that." During the interview, Brite did corroborate that the family ate hot wings on the night of one of the alleged incidents; however, Brite told Detective Miller that S.M. got the sauce on her hands when she cleaned up the kitchen and later complained that she was burning after she went to the restroom. Brite further stated that he examined S.M., determined that she must not have washed her hands before using the restroom, and instructed her to go wash her hands and clean herself with a wash rag. Brite explained that he examined her to see if something had bitten her.

After Detective Miller turned S.M.'s case over to the district attorney's office for their review, she was contacted by Brite's daughter, A.B., who subsequently came to the station for an interview regarding sexual offenses Brite committed against her. Based on that interview, Detective Miller referred A.B.'s case to the district attorney for aggravated sexual assault of a child.

Nancy Kellogg, a pediatrician who specializes in treating child sexual abuse victims, testified that S.M. told her she was asleep on the couch when Brite put his hand inside and it felt uncomfortable. S.M. was anxious and difficult to interview because she did not want to elaborate on details. Dr. Kellogg further stated that S.M. indicated through her gestures that Brite's hand was inside of her private. Dr. Kellogg testified that S.M.'s description of the burning also indicated to her that Brite had penetrated S.M. with his finger. Dr. Kellogg testified that S.M.'s physical exam was normal which is most common when examining children in this context.

A.B. testified that when she was six years old, Brite, her father, placed his penis between her legs. Although Brite tried to place his penis inside her vagina, she told him it hurt, and he stopped. He continued, however, rubbing his penis in between her legs. A.B. testified that Brite would do this to her at least three or four times a week. Brite also touched A.B.'s vagina with his fingers a lot and placed his mouth on her vagina at one point. These incidents continued after September 1, 1987, until her parents divorced when she was around fourteen years old. When A.B. was in third grade, she was called to the counselor's office and told the counselor about Brite's actions. Child protective services and the police were called. A.B. stated that the family went to counseling for about a year after she told the counselor. After the counseling, Brite started fondling A.B. again, and Brite continued placing his sexual organ between A.B.'s legs and touching her sexual organ with his sexual organ. After her parents' divorce, Brite attempted to touch A.B. when she was seventeen; however, she stopped him. A.B. was afraid to call the police because nothing happened the other time they were called. When asked why she finally decided to pursue charges against her father, A.B. stated Nancy M. told her about the incident involving S.M. A.B. further stated, "I just don't want him to do this to anybody anymore."

A. S.M.

1. Aggravated Sexual Assault (Count II)

In count II of the indictment, Brite was charged with intentionally or knowingly causing the penetration of S.M.'s female sexual organ with his finger. Thus, count II charged Brite with aggravated sexual assault. *See* TEX. PEN. CODE ANN. art. 22.021(a)(1)(B)(i) (Vernon Supp. 2008).

Brite contends the evidence is insufficient to establish "penetration." S.M. testified that Brite was eating hot wings, and "he touched [her] there and it started to burn." S.M. told Dr. Kellogg that Brite put his hand "inside" and it felt uncomfortable. Dr. Kellogg further stated that S.M. indicated through her gestures that Brite's hand was inside of her private. Dr. Kellogg testified that S.M.'s description of the burning also indicated to her that Brite had penetrated S.M. with his finger. It was within the jury's province to weigh S.M.'s reluctance or nervousness in relaying specific details of the event. We conclude that the foregoing evidence supports the jury's finding that Brite penetrated S.M.'s female sexual organ with his finger.

2. Indecency with a Child (Counts I and III)

In counts I and III of the indictment, Brite was charged with intentionally or knowingly engaging in sexual contact with S.M. by touching part of S.M.'s genitals with the intent to arouse or gratify the sexual desire of any person. Count I alleged the incident occurred on or about the 31st day of October, 2005, while Count III alleged the incident occurred on or about the 30th day of November, 2005. Both counts charged Brite with indecency with a child. *See* TEX. PEN. CODE ANN. art. 21.11(a)(1) (Vernon 2003).

S.M. testified that in October or November of 2005, she was sleeping on the couch at her grandmother's house, and Brite "put his hand in [her] pants" and touched her private part, which she stated was her vagina, underneath her panties. S.M. stated Brite's hand was touching the skin of her private part. S.M. further testified Brite touched her about four different times.

Brite initially contends that one of the counts was a lesser included offense of the aggravated sexual assault count. The evidence, however, established that Brite touched S.M. four different times in October or November of 2005. Accordingly, the evidence is sufficient to support both indecency with a child counts in addition to the aggravated sexual assault count.

Brite also contends the evidence fails to establish that he intended to arouse or gratify his sexual desire. Intent can be inferred from the acts, words, and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). In this case, Brite waited until he was alone with S.M. before touching her. Moreover, Brite refused to quit touching S.M. when she asked him to stop. Finally, the evidence that Brite committed the same conduct on four occasions is additional evidence of intent. *See Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd). Accordingly, the jury could have inferred from the evidence presented that Brite intended to arouse or gratify his sexual desire.

B.     A.B.

With regard to the two offenses Brite was charged with committing against A.B., the indictment charged Brite with committing the offenses on or about September 26, 1993. Brite contends that because A.B. testified that Brite's repeated offensive contact ceased when he moved out of the family home on August 12, 1992, the evidence was insufficient to prove the offense occurred on or about the date alleged in the indictment. The indictment's "on or about" language,

however, allows the State to prove a date other than one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *See Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Shea v. State*, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. ref'd). Because the date alleged in the indictment was anterior to the presentment of the indictment and within the statutory limitation period, Brite's sufficiency challenge fails.

Brite's first issue is overruled.

## S.M.'S COMPETENCY TO TESTIFY

In his second issue, Brite contends the trial court abused its discretion in failing to determine if S.M. understood the nature of her oath to tell the truth. The record, however, establishes that the trial court questioned S.M. regarding her oath in order to determine whether she understood the nature of her obligation. After the trial court's questioning, Brite did not assert any objection to S.M.'s testimony on the basis of incompetency. *See De Los Santos v. State*, 219 S.W.3d 71, 80 (Tex. App.—San Antonio 2006, no pet.); TEX. R. APP. P. 33.1(a). Accordingly, Brite has not preserved this complaint for our review. *See id*.

## EXPERT TESTIMONY

In his third issue, Brite asserts that the trial court abused its discretion "when it allowed Detective Miller to testify as an expert in interpreting 'gesture clusters' without requiring the State to lay a proper predicate for the basis and educational training behind her opinion." Part of the testimony about which Brite complains is Detective Miller's testimony that Brite qualified his answers. This testimony does not relate to any "gesture clusters" which is the issue Brite asserts on appeal. It would appear that Brite's issue is directed at the answers Detective Miller gave in

response to questioning that occurred after Brite's videotaped interview was played for the jury. In that line of questioning, Detective Miller was being asked why she continued to ask the same question over and over again. Detective Miller responded that Brite's answer changed as the question was repeatedly asked. Detective Miller was then asked whether she sensed anything from Brite's body language or demeanor. Brite objected to the question on the basis that Detective Miller's qualifications to interpret body language had not been established. Detective Miller was then asked about her qualifications to observe individuals and changes in their body language.[1] Detective Miller responded that her training and experience showed her what to look for in changes in body language, and she looks for "clusters of gestures," i.e., eyes looking off to the left, licking of lips. Detective Miller previously testified that she had been a police officer for almost 15 years and had investigated sexual assaults of adults and children by known offenders for three years. Detective Miller has a degree in criminal justice and is a certified master peace officer and a certified special investigator of family violence and sex crimes.

We use an abuse of discretion standard in reviewing a trial court's determination of a witness's qualifications. *Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). Absent a clear abuse of discretion, a trial court's decision to admit testimony will not be disturbed on appeal. *Id*. Under Rule 702, a witness may qualify to testify by knowledge, skill, experience, training or education. TEX. R. EVID. 702.

In this case, Detective Miller was a fifteen year veteran officer with three years of experience in investigating sexual assault cases. She has a degree in criminal justice and is a certified special investigator of sex crimes. Given her qualifications, the trial court did not abuse its discretion in

---

[1] Importantly, Detective Miller's testimony regarding body language was not directed to the truth of Brite's responses to her questions, but to the reason for Detective Miller's repetitive questioning.

allowing Detective Miller to testify regarding the manner in which she interprets body language. Detective Miller's testimony primarily addressed the reason she continued to repeatedly ask Brite the same question. Moreover, even if we were to assume the testimony was erroneously admitted, we would conclude its admission was harmless. *See* TEX. R. APP. P. 44.2(b). Both complainants testified regarding Brite's actions. S.M.'s testimony was consistent with the details she told her mother and Dr. Kellogg. Finally, the jury also viewed the videotaped interview and could make an independent determination with regard to whether Brite equivocated in his answers.

Brite's third issue is overruled.

### UNCHARGED OFFENSES AGAINST A.B.

In his fourth issue, Brite complains of the admission of additional uncharged extraneous offenses against A.B. In his brief, Brite refers to Rule 401, Rule 403, Rule 404(b), limitations, lack of notice, and hearsay. Brite provides record citations to objections made to testimony that the State sought to elicit from Detective Miller; however, after the discussion of the objections outside the presence of the jury, the State decided not to pursue that testimony. Brite also provides record citations to A.B.'s testimony regarding offenses Brite committed against her when she was six years old and A.B.'s conversation with Nancy M.

Before A.B. testified, Brite's attorney objected to any testimony regarding offenses for which limitations had run. The only other objection made by Brite's attorney regarding the introduction of A.B.'s testimony about the other offenses was absence of notice under Rule 404(b). Because these are the only objections regarding A.B.'s testimony relating to the uncharged offenses that were made at trial, these are the only complaints preserved for our consideration. TEX. R. APP. P. 33.1(a).

Brite contends that A.B.'s testimony regarding the uncharged offenses was inadmissible because limitations had run and no notice was given under Rule 404(b). Notwithstanding Rule 404, however, evidence of other crimes, wrongs, or acts committed by a defendant against a child who is a victim of an alleged offense under Chapter 21 or Chapter 22 of the Texas Penal Code shall be admitted for its bearing on relevant matters, including the previous and subsequent relationship between the defendant and the child. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2008). In this case, the trial court instructed the jury that it could consider acts that occurred prior to September 1, 1987, only to "illustrate a prior relationship between the child and the defendant." Moreover, the State provided Brite with notice that it intended to introduce evidence that on or about the 26th day of September, 1985, Brite caused the penetration of A.B.'s sexual organ with Brite's sexual organ, caused A.B.'s sexual organ to contact Brite's sexual organ, caused A.B.'s sexual organ to contact Brite's mouth, engaged in sexual contact with A.B. by causing A.B. to touch Brite's genitals, and engaged in sexual contact with A.B. by touching A.B.'s genitals. The notice was filed on October 17, 2007, more than ten days before trial. Moreover, several of the uncharged offenses had been presented in the original indictment but were subsequently quashed. Accordingly, Brite had the requisite notice of the State's intent to introduce evidence of the uncharged offenses, and that evidence was properly admitted pursuant to article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (Vernon Supp. 2008) (requiring notice to be provided upon request); *Scott v. State*, 57 S.W.3d 476, 480 (Tex. App.—Waco 2001, pet. ref'd) (stating notice provided ten days before trial will be presumptively reasonable).

The only other testimony cited by Brite in reference to this issue is A.B.'s testimony that she spoke with Nancy M. about similar problems S.M. experienced with Brite. The only hearsay

objection made by Brite with regard to this testimony, however, was sustained. When the question was re-phrased, no additional objections were made. Accordingly, Brite has not preserved this complaint for our review. TEX. R. APP. P. 33.1(a).

Brite's fourth issue is overruled.

### ALTERNATIVE EXPLANATION EVIDENCE

In his fifth issue, Brite contends the trial court erred in preventing him from presenting evidence of alternative explanations for S.M.'s behavior. Specifically, Brite states in his brief, "Kellogg was allowed to testify that [S.M.'s] anger and lack of sleep were consistent with sexual abuse." Brite then contends that the trial court denied "defense evidence that could have provided alternative explanations for [S.M.'s] behavior;" i.e., her anger and lack of sleep. Specifically, Brite asserts the trial court erred in excluding evidence that Rick M., S.M.'s father, regularly watched pornographic movies with [S.M.] and was arrested in June of 2005 and convicted in April of 2006 of indecent exposure.

The State initially responds that Brite's record citation to Dr. Kellogg's testimony is mistaken. Not only did Dr. Kellogg not testify about S.M.'s anger and lack of sleep on the page cited, but Dr. Kellogg never referred to S.M.'s anger and lack of sleep during any of her testimony. The State suggests that Brite may have intended to refer to Nancy M.'s testimony that S.M. had "some anger" about the incident and had trouble sleeping.

Assuming that Brite did intend to refer to Nancy M.'s testimony as a basis for inquiring into alternative reasons for S.M.'s anger and lack of sleep, Rick M's indecent exposure conviction was first mentioned to the trial court before trial when the State made an oral motion in limine. Defense counsel argued that the conviction was not too remote and "goes into the pattern of behavior of the

child which the mother says that she had noticed during this particular time period." Defense counsel also stated that he suspected the indecent exposure incident was the reason why Rick M. left the household and moved to his mother's house. In response to the trial court's inquiry regarding who Rick M. was charged with exposing himself to, defense counsel responded that he did not know. The prosecutor clarified that his understanding was that Rick M. exposed himself to two store clerks at a convenience store, and it did not involve children. The trial court stated, "it's not going to come in unless you can show the relevance. And if it's an exposure to some store clerks, it's definitely not coming in."

When defense counsel requested permission to cross-examine Nancy M. about this alternative explanation for S.M.'s anger and lack of sleep, the trial court asked whether defense counsel had obtained "the additional information about that offense that I had requested." Defense counsel stated that he only had a certified copy of the judgment which did not provide any details. The State reiterated that the offense involved adults and asserted, "This would be a fishing expedition. He has absolutely no basis and [sic] fact to say that there was any type of inappropriate touching or exposure or anything like that with respect to [S.M.]. And to allow him to go into that would be basically just a fishing expedition to get the jury to think that, well, since the dad may have done this to some people at a store, then he was touching his daughter at home."

Although a defendant's right to confrontation and cross-examination is constitutionally safeguarded, the right is not absolute. *Benoit v. State*, 87 S.W.3d 668, 673 (Tex. App.—San Antonio 2002, pet. ref'd). The trial court retains great latitude in imposing reasonable limitations on cross-examination and may properly limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally relevant

interrogation. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *Benoit*, 87 S.W.3d at 673. When considering whether a trial court's decision to exclude testimony is error, we must determine whether the trial court abused its discretion. *Benoit*, 87 S.W.3d at 673.

In this case, Brite sought to cross-examine Nancy M. about additional possible explanations for S.M.'s anger and lack of sleep by inquiring into the possibility that S.M. knew of her father's conviction for indecent exposure and that the conviction made S.M. angry. Given that the conviction was for indecent exposure involving adults and in light of defense counsel's failure to provide the additional detail the trial court requested, the trial court did not abuse its discretion in excluding the indecent exposure evidence to avoid confusion of the issues or marginally relevant interrogation. *See Lopez*, 18 S.W.3d at 222; *Benoit*, 87 S.W.3d at 673.

The other area of evidence that the trial court excluded was evidence that Rick M. regularly watched pornographic movies in S.M.'s presence. Given the fact that defense counsel only sought to introduce the evidence to present alternative reasons for S.M.'s anger, the trial court did not abuse its discretion in limiting the scope of cross-examination to avoid confusion of the issues or marginally relevant interrogation. *See Lopez*, 18 S.W.3d at 222. *Benoit*, 87 S.W.3d at 673. Even if we were to assume, however, that the trial court abused its discretion in excluding the evidence with regard to pornography, the exclusion of that evidence would not have resulted in harm.

Any error that improperly limits the right to confrontation, including the constitutional right to cross-examination, is subject to a harmless error analysis. *Saglimbeni v. State*, 100 S.W.3d 429, 435 (Tex. App.—San Antonio 2002, pet. ref'd). In performing a harmless error analysis, the reviewing court must review the entire record and apply a three-prong test. *Id*. at 435-36. Under the first prong, the reviewing court must assume that the damaging potential of the cross-examination

was fully realized. *Id*. at 436. The court then must review the error in consideration of the following five factors: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id*. Finally, keeping the first two prongs in mind, the reviewing court must reverse a conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Id*.; *see also* TEX. R. APP. P. 44.2(a).

In this case, the damaging potential of the testimony if fully realized would have established another reason S.M. was angry around the time the offenses were committed against her. The reason S.M. was angry was not an important issue in determining whether Brite had committed the offenses against her. The testimony was cumulative of the other alternative reasons developed for S.M.'s anger. The evidence that Rick M. watched pornographic material with S.M. present was not contradicted. Brite was permitted to cross-examine S.M. with regard to three other potential explanations for her anger, i.e., Rick M. yelled at her, cursed her with profanity, and her parents were divorcing. The overall strength of the prosecution's case rested on S.M.'s outcry to Nancy M., S.M.'s testimony regarding Brite's actions, and the information S.M. reported to Dr. Kellogg. Accordingly, having applied the first two prongs, we conclude beyond a reasonable doubt that the exclusion of the evidence, i.e., that S.M. may have been angry around the time in question because Rick M. watched pornography while she was present, did not contribute to Brite's conviction or punishment.

Brite's fifth issue is overruled.

## BOLSTERING OF WITNESSES

In his sixth issue, Brite asserts the trial court allowed the State to engage in improper bolstering of its witnesses. Brite provides six record citations to support his argument. The first citation was to the hearing on Brite's motion in limine. It is well-settled, however, that a motion in limine, whether granted or denied, preserves nothing for appellate review. *See Griggs v. State*, 213 S.W.3d 923, 926 n. 1 (Tex. Crim. App. 2007). No "bolstering" objection is made by defense counsel on any of the remaining pages of the record cited in Brite's brief. *See* TEX. R. APP. P. 33.1(a) (noting objection is necessary to preserve complaint for appellate review). Moreover, we note that "[b]ecause of the multifarious origins of 'bolstering,' courts have found concern with it as an objection on its face," and have questioned whether it remains a "valid objection to preserve error for review." *See Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009).

Brite's sixth issue is overruled.

## DOUBLE JEOPARDY

In his seventh issue, Brite contends that his rights against double jeopardy were violated because Count III was a lesser included offense of Count II. In essence, Brite argues that the State was relying on proof of the same act as a violation of two different penal statutes.

"In order to prevail on a double jeopardy claim, the evidence must show that the two offenses at issue necessarily arose from 'one act which could be subject to two different interpretations.'" *Martinez v. State*, 212 S.W.3d 411, 422 (Tex. App.—Austin 2006, pet. ref'd) (quoting *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998)). In this case, Brite alleges that his conviction for indecency with a child by contact was based on the same conduct underlying his conviction for aggravated sexual assault of a child because both offenses arose from the "'hot wing' allegation."

S.M. testified, however, that Brite touched her genital area four times including the "'hot wing' allegation." Although the indictment alleged two offenses that occurred "on or about" the same date, it is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is prior to the presentation of the indictment and not so remote that prosecution is barred by the statute of limitations. *See Sledge v. State*, 953 S.W.2d at 256. In this case, S.M.'s testimony established three offenses separate from the "'hot wing' allegation" each of which occurred prior to the presentation of the indictment and within the applicable statute of limitations period. Accordingly, Brite's double jeopardy challenge fails, and his seventh issue is overruled. *See Cabral v. State*, 170 S.W.3d 761, 764-65 (Tex. App.—Fort Worth 2005, pet. ref'd) (concluding no double jeopardy violation occurred where complainant testified regarding two separate and distinct incidents of abuse).

## JURY CHARGE

In his eighth issue, Brite complains that the jury charge did not provide adequate language to ensure that the jury's verdict was unanimous as to each separate offense. Brite asserts, "Jurors could easily believe all indecency counts to [S.M.] are one charge and both indecency counts to [A.B.] are one charge." The case cited by Brite to support his assertion, *Mathonican v. State*, 194 S.W.3d 59 (Tex. App.—Texarkana 2006, no pet.), is readily distinguishable from the instant case. In *Mathonican*, the defendant was charged with three separate sexual assault offenses; however, the jury was given only one verdict form. 194 S.W.3d at 63-64. In this case, the jury was given separate verdict forms for each offense and was instructed, "In order to return a verdict, each juror must agree to that verdict." As a result, the jury charge was adequate to ensure that the jury's verdict was unanimous as to each separate offense. *See Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim.

App. 2007) (noting trial judge commits no error in submitting the various offenses alleged in separate counts of an indictment in separate verdict forms and that the simplest way to ensure offenses are decided unanimously is to submit separate verdict forms). Brite's eighth issue is overruled.

## CLOSING ARGUMENT

In his ninth issue, Brite contends that the trial court erred in overruling his objection to improper closing argument at punishment. Brite's complaint focuses on the following argument:

> Now, there's a little bit of difference with respect to parole. And I'm not going to get into a whole long discussion because we can't, under the law, talk too much about it. But the law changed with respect to parole for the counts involving [S.M.] and the counts involving [A.B.]. There was a different set of laws in effect at the time that the offenses were committed against [A.B.]. And the parole law that applies to those offenses is different. The time that he's assessed –
>
> [Defense counsel]: Your Honor, I'll object. I think we're getting beyond the instructions of the Jury Charge as to what parole law is and isn't.
>
> [Prosecutor]: I'm not, Judge. I'm going to track it exactly.
>
> THE COURT: All right. Do it and move on.

The prosecutor then proceeded to explain without further objection that Brite would be eligible for parole with regard to the offenses involving S.M. after he served half of the time assessed. The prosecutor also explained without objection that Brite would be eligible for parole on a life sentence after thirty years.

We overrule Brite's ninth issue for two reasons. First, we agree with the State that Brite did not obtain a ruling on his objection. TEX. R. APP. P. 33.1(a). Second, at the time the objection was made, the prosecutor "did not convey any information beyond what was properly contained in the charge" when he explained that the parole eligibility rules governing the offenses against S.M. were

different from the rules governing the offenses against A.B. *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). "The explanation simply ensured that the jury understood the language set out in the instructions." *Id*. Because "[n]othing in this case indicates that the prosecutor's explanations went beyond an attempt to clarify the meaning of the jury instructions," especially prior to the objection made by defense counsel, the trial court did not err in overruling the objection.

Brite's ninth issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Rebecca Simmons, Justice

DO NOT PUBLISH