

# NUMBER 13-09-00109-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ADRIAN PINA CONTRERAS,                                           Appellant,

v.

THE STATE OF TEXAS,                                             Appellee.

### On appeal from the 103rd District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Rodriguez

Appellant Adrian Pina Contreras was convicted of murder and sentenced to seventy-seven years in prison. Contreras appeals the judgment, asserting six issues which we renumber and reorganize as the following four issues: (1) the State improperly withheld impeachment evidence and the trial court erred in refusing to grant appellant's motion for

new trial on that basis; (2) the trial court erred in admitting evidence of appellant's gang affiliation and a photograph of the victim; (3) the State made improper jury argument; and (4) counsel's assistance was ineffective. We affirm.

## I. BACKGROUND

Testimony at trial revealed that on March 20, 2004, the victim, David Garcia, was at the beach on South Padre Island. During the early-morning hours, Garcia was stabbed in the neck by a man wearing a Hawaiian shirt. Elizabeth Flores Zorola,[1] a medical assistant who was at the beach when the stabbing occurred, performed CPR on Garcia until the EMS arrived. Garcia was taken to the hospital by ambulance. According to the autopsy report, Garcia was pronounced dead on arrival at the hospital. Norma Jean Farley, a forensic pathologist, testified that the cause of death was a stab wound to the neck.

In January 2008, appellant was indicted for the murder of Garcia. The jury trial began on November 18, 2008. Two eyewitnesses, Zorola and Adriana Flores, Zorola's sister, testified at trial. Zorola testified that the man who stabbed Garcia was wearing a blue Hawaiian shirt with white flowers on it. Zorola described the man as bald and big—heavy set. He wore his shirt open, with a white muscle shirt under it. Before the stabbing, Zorola saw the man's face when he walked in front of her and she noticed his shirt. Flores also described the man who struck Garcia as "big, bald," and "wearing a Hawaiian shirt with a muscle shirt under [it] with beige shorts." Flores testified that she saw the man walking on the beach. In addition, Moises Ruiz testified that he and Garcia were

---

[1]Elizabeth Flores Zorola is also referred to in the record as Elizabeth Lilliana Flores.

2

"hanging out" during Spring Break and that he saw someone "punch" Garcia. Ruiz testified that he did not see appellant at the beach that night, but he described the person who struck Garcia as "chubby" with "shaved hair." Ruiz also testified that the man was wearing a shirt with Hawaiian designs.[2]

Furthermore, Zorola and Flores testified that about a week after the incident they were asked to look at photo lineups and had identified appellant as the person who stabbed Garcia. Flores, who was fourteen at the time of the incident, testified that she remembered the man's face and was not mistaken in her identification of appellant. At trial, both women identified appellant as the person each had identified earlier from the photo lineups.

Lieutenant Domingo Diaz, Jr., the police officer who was with Zorola and Flores when they identified appellant, also testified regarding the photo lineup identifications.[3] He stated that each lineup included a picture of appellant. Lieutenant Diaz identified appellant as the same person the witnesses had identified, explaining that appellant had lost a lot of weight.

Appellant's defense was that the State's prosecution was based on a mistaken identity. Appellant denied being at South Padre Island on the morning in question and called other witnesses who testified likewise. The jury rejected this defense, found appellant guilty of murder, and assessed a sentence of seventy-seven years.

---

[2]The three witnesses testified that the person who struck Garcia was wearing a Hawaiian shirt. The description of the pattern on the shirt differed somewhat. Appellant testified that he did not own a Hawaiian shirt.

[3]We note Zorola testified that she was in her apartment at the time she looked at the photo lineups but that Lieutenant Diaz testified that he showed Zorola the photo lineups in the parking area of her residence. Otherwise, the testimony regarding the identifications made from the photo lineups was consistent.

Appellant timely filed a motion for new trial asserting that he was entitled to a new trial because the State had not provided him with information regarding criminal records of a witness and a plea agreement offered to the same witness in another case for testifying in appellant's case; appellant asserts this information could have been used for impeachment purposes. After considering the evidence and argument offered at the hearing, the trial court denied the motion for new trial. This appeal ensued.

## II. BRADY VIOLATION

In his first issue, appellant complains that his conviction should be set aside because the State improperly withheld impeachment evidence, violating *Brady v. Maryland*. *See* 373 U.S. 83, 87 (1963). Specifically, appellant contends that, after trial, his counsel discovered that Zorola had received favorable treatment from the State and, subject to her testimony, was to have a pending aggravated assault felony charge reduced to a Class A misdemeanor. Appellant claims that this information could have been used for impeachment purposes but was not provided to his trial counsel by the State.[4] He further argues that the evidence offered at the hearing on his motion for new trial showed that Zorola was provided a deal by the District Attorney's office and that the evidence, had it been disclosed by the State, would have been material to his defense.

---

[4]Appellant also claims that trial counsel requested but did not receive any report from NCIC/TCIC (national and statewide criminal information data bases) and other exculpatory evidence from the State. However, appellant does not develop this contention on appeal; he provides no further explanatory argument addressing the information contained in the NCIC/TCIC report or other exculpatory evidence about which he complains. Although appellant provides general law and one citation to the record, he merely states in a conclusory fashion that this information, which could have been used for impeachment purposes, was not provided by the State. In sum, appellant provides no meaningful analysis to support this claim that the State improperly withheld this evidence which was allegedly impeachment or exculpatory evidence. Thus, this briefing is inadequate. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).

## A. Applicable Law and Standard of Review

In *Brady*, the United States Supreme Court concluded that the suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *See Brady*, 373 U.S. at 87; *Harm v. State*, 183 S.W.3d 403, 405 (Tex. Crim. App. 2006) (en banc); *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Under *Brady*, a prosecutor has an affirmative duty to turn over material, exculpatory evidence. 373 U.S. at 87. Exculpatory evidence includes impeachment evidence. *Wyatt*, 23 S.W.3d at 27 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

To show reversible error under *Brady*, a defendant must prove that: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); *see Harm*, 183 S.W.3d at 405; *see also Lowry v. State*, No. 13-03-00081-CR, 2008 Tex. App. LEXIS 935, at *30 (Tex. App.–Corpus Christi Feb. 7, 2008, pet. ref'd) (mem. op., not designated for publication). "The *mere possibility* that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Hampton*, 86 S.W.3d at 612 (emphasis added) (quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)). Rather, the inquiry is whether the failure of the State to disclose the evidence undermines the confidence in the jury's verdict. *See Lempar v. State*, 191 S.W.3d 230, 241 (Tex. App.–San Antonio

5

2005, pet ref'd) (mem. op., designated for publication) (citing *Ex parte Richardson*, 70 S.W.3d 865, 870 n.22 (Tex. Crim. App. 2002)).

Because the *Brady* violations were raised in a motion for new trial, we review the trial court's determination under an abuse of discretion standard. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). "We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).

## B. Discussion

At the hearing on the motion for new trial, the attorneys for the State argued to the trial court that they had no knowledge of any offer to secure Zorola's testimony in exchange for a reduction of charges on an aggravated assault case pending against her. By affidavit filed in support of the State's response to appellant's motion for new trial, the prosecutor stated that the State "has not promised [Zorola] anything regarding the charges that are pending against her at this time for her testimony" and that [the prosecutors] "are not involved in the plea bargaining."

Appellant supported his position through the testimony of attorney Angela Nix, a practicing attorney who had been appointed in June 2006 to represent Zorola in a second-degree felony, aggravated-assault case. Nix testified that she was at the courthouse for the re-arraignment of her client Zorola after being advised in November 2008, "that one of [her] long-gone absconder clients [Zorola] had surfaced again," and she "needed to come . . . to the courthouse to arraign [Zorola] and speak to the [S]tate about her." While waiting

6

for her client, Mike Kiesel from the District Attorney's Office informed Nix there was an offer they wanted to extend to Zorola regarding her aggravated assault case.[5] Although Nix testified that Zorola seemed to be aware of the offer and had accepted it, she also testified that Zorola never told her that she had an agreement to testify and that, in exchange for that testimony, she was going to get a deal.

On cross-examination it was determined that Nix's conversation with Kiesel occurred while Zorola was testifying on behalf of the State in appellant's case. According to Nix's testimony, during that conversation Kiesel told her that Zorola's testifying was the reason for them making this more than generous offer to reduce Zorola's charge to a Class A assault.[6] Finally, in response to the trial court's questions, Nix indicated that she spoke with Kiesel before she went to re-arraign her client and that while going to the re-arraignment, Nix and Kiesel observed Zorola being assaulted by "some folks interested in the trial." Although Nix intended on "doing the plea with [Zorola] that day in county court . . . after she got assaulted, she was rather shook [sic] and she left the courthouse with an escort provided by the DA's office." Nix acknowledged that, except for a November 20 re-arraignment form filed with Judge Leal, nothing had been filed with the county court. Nix also testified that she had not received any paperwork indicating a plea in her client's case and had not been notified that it had been filed.

---

[5]It is undisputed that Mike Kiesel is no longer with the District Attorney's Office in Cameron County, Texas.

[6]Nix testified that, as part of the agreement, the aggravated assault would be dismissed in the district court where Zorola would not have been eligible for probation because of a previous conviction. Nix also testified that she had noted on her calendar that, as discussed with Kiesel, she was, and still is, expecting that Zorola will "plead cold to the misdemeanor . . . on an assault Class A, and transfer the probation to Nebraska."

Assuming without determining that the State withheld evidence and that it was favorable to appellant, thus, satisfying *Brady*'s first two elements, we conclude, nonetheless, that the trial court did not abuse its discretion in denying appellant's motion for new trial because appellant cannot show that the complained-of information is material. *See Hampton*, 86 S.W.3d at 612; *see Harm*, 183 S.W.3d at 405. The jury heard Zorola's testimony on November 19, 2008. The jury had already heard Flores identify appellant as the person who stabbed Garcia and who was wearing a Hawaiian shirt. The jury had also heard Ruiz, who was "hanging out" with Garcia that morning, testify that he saw a "chubby guy" "swing at David," and that the man had "shaved hair" and was wearing a shirt with Hawaiian designs. The jury had heard Lieutenant Diaz testify that approximately one week after the incident Zorola identified appellant from a photo lineup. That identification was made more than four years before Zorola was asked to testify and more than four years before she entered into an agreement, if any, with the State to testify in appellant's case in return for favorable treatment in her 2006 aggravated assault case.

Appellant asserts that he wanted to use this information for impeachment purposes. In his motion for new trial he asserted that the information would have been helpful in his defense because it would go to Zorola's credibility and whether she was testifying to the facts or whether she was testifying to keep herself from going to prison. However, it is clear to this Court that the State's failure to disclose any agreement it may have had with Zorola would not have undermined the confidence in the jury's verdict. *See Lempar*, 191 S.W.3d at 241 (citing *Ex parte Richardson*, 70 S.W.3d at 870 n.22). At best, it might suggest that Zorola had an interest in testifying at trial. There is no evidence that knowledge of an agreement would have offered appellant the opportunity to impeach

8

Zorola's testimony. *See Harm*, 183 S.W.3d at 408 (explaining that "impeachment evidence is that which disputes or contradicts other evidence"). Zorola's testimony at trial was consistent with her identification of appellant four years earlier and also with the testimony of Flores, Ruiz, and Lieutenant Diaz. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (noting that the jury, as the trier of fact, is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony). Therefore, while it is conceivable that this information would possibly have helped the defense, the mere possibility does not establish "materiality" in the constitutional sense. *See Hampton*, 86 S.W.3d at 612. Appellant has failed to demonstrate that the information would probably lead to a different outcome. *See id.*; *see also Harm*, 183 S.W.3d at 405; *Wyatt*, 23 S.W.3d at 27. As a result, any evidence regarding an agreement Zorola had with the State would not be material. *See Wyatt*, 23 S.W.3d at 27. Thus, appellant has not satisfied the third element of *Brady*. *See Hampton*, 86 S.W.3d at 612; *Harm*, 183 S.W.3d at 405. Based on this analysis, we further conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial. *See Webb*, 232 S.W.3d at 112. Accordingly, we overrule appellant's first issue.

### III. ADMISSION OF EVIDENCE

In his second issue, appellant complains of the admission of certain evidence, including evidence of appellant's gang affiliation and an autopsy photograph.

**A. Gang Affiliation Testimony**

Appellant first asserts that the trial court erred in allowing the State to present evidence of his gang affiliation because the evidence was inflammatory and irrelevant and

9

used only "to show that he was a bad and dangerous person who acted in conformity with his bad character." *See* TEX. R. EVID. 404(b); *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986) (en banc). Appellant further claims that, through this testimony, the danger of unfair prejudice substantially outweighed the probative value of the evidence. *See* TEX. R. EVID. 403. The State responds that appellant has failed to preserve error on this issue. We agree.

Although appellant contends that the State improperly elicited testimony from appellant and his alibi witnesses concerning appellant's alleged gang membership, appellant does not assert that defense counsel raised such an objection to the complained-of testimony, nor have we found this to be the case. Thus, appellant presents nothing for review. *See* TEX. R. APP. P. 33.1(a) (providing that to preserve error for appellate review, the complainant must make a timely, specific objection that the trial court refuses); *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc); *see also* TEX. R. EVID. 103.

## B. Autopsy Photograph

Appellant also complains of the admission of State's exhibit 8, an autopsy photograph of the victim's head. He contends that the trial court erred in admitting the photograph because it is prejudicial, of no probative value, and the prejudice outweighs the need for the photograph. *See* TEX. R. EVID. 403, 404.

The admissibility of photographs over a challenge is within the sound discretion of the trial court. *Rojas v. State*, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998). However, when a defendant affirmatively states that he has "no objection" to the admission of the evidence during trial, he waives the right to complain about the trial court's ruling on appeal. *Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008). In this case,

10

appellant's counsel affirmatively responded that he had no objection when the State tendered exhibit 8, the autopsy photograph, and the trial court received the exhibit without objection. Therefore, appellant has not preserved this complaint.

Having concluded that appellant failed to preserve error regarding the admission of gang-affiliation testimony or of the autopsy photograph, we overrule appellant's second issue.

## IV. IMPROPER JURY ARGUMENT

In his third issue, appellant asserts that the trial court erred in refusing to instruct the jury to disregard the following prosecutorial jury argument: "Is it a coincidence that Norma Rendon came here and told you that she received information from Armando Trevino that only the person there would have known that Bubba Pina was at the beach." We need not address this contention, however, because appellant objected that the argument was based on facts not in evidence, and the trial court sustained his objection. *See Young*, 137 S.W.3d at 69. Appellant then asked for an instruction, and the trial court granted his request. *See id*. Therefore, this assertion is misguided.

Appellant also appears to be complaining of all prosecutorial jury arguments that suggested appellant's gang affiliation. However, the court of criminal appeals has concluded that an objection pursued to an adverse ruling is required to preserve jury argument error for appellate review. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). In this case, when the prosecutor presented gang-related jury arguments, appellant did not object. Therefore, appellant has not preserved error to the extent he is now complaining of such arguments. We overrule appellant's third issue.

11

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth issue, appellant asserts that his conviction should be set aside because he received ineffective assistance of counsel at trial. He complains of the following instances when counsel was allegedly ineffective: (1) when counsel elicited testimony from appellant regarding his prior criminal history, including an arrest for aggravated assault with a weapon on a rival gang member; (2) when counsel elicited testimony from witnesses opening the door to otherwise inadmissable extraneous offense or "bad acts" evidence; (3) when counsel asked questions of appellant and witnesses about appellant's gang affiliation; and (4) when he failed to object to testimony or to request a limiting instruction on gang affiliation testimony or extraneous-offense evidence.[7] Appellant asserts that counsel's actions destroyed his credibility and prejudiced his defense.

*Strickland v. Washington* sets forth the standard with which we review claims of ineffective assistance of counsel. 466 U.S. 668, 688 (1984); *see Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc). In order to determine whether appellant's trial counsel rendered ineffective assistance, we must first determine whether appellant has shown counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland*, 466 U.S. at 688,

---

[7]Appellant also contends that his counsel was ineffective because he failed to (1) adequately protect his rights by insisting on rulings on discovery requests; (2) object to hearsay; and (3) conduct a sufficient independent investigation of the facts of the case. He does not, however, support these assertions with clear and concise arguments and with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc) ("It is incumbent upon counsel to cite specific legal authority and to provide legal argument based upon that authority."). Therefore, we conclude that these additional contentions are inadequately briefed. *See Tufele v. State*, 130 S.W.3d 267, 271 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd).

690-94.  In assessing a claim of ineffective assistance of counsel, we indulge a strong presumption that "counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Stafford*, 813 S.W.2d at 508-09.  Furthermore, the record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim.  *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

In this case, the appellate record contains no evidence regarding the trial strategy of appellant's counsel.  *See id*.  Specifically, the record developed at the hearing on the motion for new trial contains no evidence supporting appellant's ineffective assistance of counsel claim.  Appellant's trial counsel did not testify regarding his performance at trial.  Therefore, we conclude that the record does not rebut the presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy.  *See Garcia*, 57 S.W.3d at 440; *Stafford*, 813 S.W.2d at 508-09; *see also Salinas*, 163 S.W.3d at 740.  We overrule appellant's fourth and final issue.

## VI. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of June, 2010.